## RODGERS *v.* BLANDON.

1. AUTOMOBILES — INTERSECTION — THROUGH STREETS — STOPPING —
   CONTRIBUTORY NEGLIGENCE—OVERTAKING VEHICLES—QUESTIONS FOR
   JURY.

   In action against taxicab driver and its owner for injuries sus-
   tained when taxicab collided with right rear portion of car
   in which plaintiff was riding as it had nearly completed
   crossing of through street when taxicab attempted to over-
   take and pass to the right of a third car, questions of con-
   tributory negligence of plaintiff's driver and whether he had
   the right to rely upon taxicab driver's observance of the law
   in passing vehicles *held*, for jury, where evidence is in dis-
   pute as to whether plaintiff's driver stopped before entering
   the intersection. (1 Comp. Laws 1929, §§ 4706 [a], 4707 [c]).

2. SAME—OVERTAKING AND PASSING—INTERSECTIONS—RIGHT-HAND
   SIDE—NEGLIGENCE.

   It is negligence as a matter of law for a vehicle approaching
   another from the rear to pass it at an intersection or on the
   right-hand side (1 Comp. Laws 1929, §§ 4706 [a], 4707 [c]).

3. WITNESSES—IMPEACHMENT.

   In order to introduce impeaching testimony, the witness to be
   impeached must be asked whether he made the statement in
   question to a certain person at a certain time and place.

4. SAME—IMPEACHMENT.

   A general denial by a witness that he has made a certain
   statement, without fixing the time and place of such state-
   ment and specifying the person to whom it is claimed the
   statement was made, is insufficient for impeachment.

5. SAME—IMPEACHMENT—STATEMENT AT DIFFERENT PLACE.

   In action for injuries sustained in an automobile collision
   wherein plaintiff's witness was asked whether or not he
   had made a certain statement to a police officer at the in-
   vestigation bureau and denied having done so, objection was
   properly sustained to question to police officer as to whether
   or not such statement had been made by witness at a gasoline
   station since such testimony by the officer failed to satisfy
   the requirements for impeachment.

As to standard of conduct defined or required by legislature as
definitive of due care, see 2 Restatement, Torts, § 285, and comment h,
and § 286.

6. TRIAL—GREAT WEIGHT OF THE EVIDENCE—CREDIBILITY OF WIT-
NESSES.
   In personal injury case in which conflicting evidence was pre-
      sented by an equal number of witnesses on each side, the
      verdict of the jury cannot be said to be against the great
      weight of the evidence as the weight to be given the testi-
      mony and the credibility of the witnesses were for the jury.

Appeal from Wayne; Miller (Guy A.), J. Sub-
mitted June 13, 1940. (Docket No. 86, Calendar No.
41,097.) Decided October 7, 1940.

Case by Edna K. Rodgers against Clarence G.
Blandon and Charles Hentz for damages for per-
sonal injuries sustained in a collision of automobiles
at an intersection of streets. Verdict and judgment
for plaintiff. Defendants appeal. Affirmed.

*Henry A. Platt* and *Samuel S. Platt* (*Thomas
Conklin,* of counsel), for plaintiff.

*Edward N. Barnard,* for defendants.

McALLISTER, J. On March 13, 1937, about 10
o'clock in the morning, plaintiff was riding with her
husband in an automobile approaching the inter-
section of Stimson avenue and Second boulevard in
the city of Detroit. Plaintiff's husband, Horace
Rodgers, was driving the car, and proceeding in an
easterly direction on Stimson avenue. Second boule-
vard is a north and south highway, 66 feet wide, and,
by ordinance, is a stop street. It is divided into five
lanes of traffic, two on each side of the highway and
one in the center, the center lane being used for
southbound traffic during the morning rush hours,
and for northbound traffic during the afternoon.
The lanes are approximately 12½ feet wide.

Mr. Rodgers testified that when he approached the
intersection, he brought his automobile to a com-

plete stop just west of the westerly crosswalk of Second boulevard. There is a dispute with reference to his testimony on this point, but it raised a question of fact in which plaintiff's contention was amply supported by other testimony. Mr. Rodgers stated that after making the stop he looked to the north, from which direction there was no approaching traffic. He says that he then made an observation to the south, and saw an approaching Ford car about half a block away, followed by a taxicab at a distance of two or two and one-half car lengths behind. After moving his car ahead a foot or two toward the intersection, and judging that the Ford car was approximately 175 feet away, proceeding at a rate of speed of about 25 miles an hour, and that the taxicab was about 50 feet directly behind the Ford, Rodgers started across the intersection. When the front wheels of his car reached the middle of Second boulevard, Rodgers made another observation to the south and saw that the Ford was continuing its approach and was about 50 or 60 feet from him, and that the taxicab was following about 40 feet behind. Both the Ford and the taxicab were in the traffic lane east of the center lane. Between them and the curb was the other traffic lane, referred to as the parking lane. As Rodgers was passing the middle of the boulevard, it was his impression that the taxicab was turning to the left as though it were about to attempt passing the Ford on the left. Rodgers continued to cross the boulevard at a speed of 10 miles an hour and glanced again to the south, when he saw that the taxicab was entering the intersection about two-thirds of a car length ahead of the Ford, and on its right-hand side. Rodgers then attempted to increase his speed in order to get out of the path of the oncoming taxicab and was almost across the intersection when his car was struck on

the rear right wheel by the taxicab; and in the collision plaintiff sustained the injuries for which she brought suit. From a verdict in plaintiff's favor, upon which judgment was entered, defendants Blandon, the driver of the taxicab, and Hentz, the owner, appeal, claiming that plaintiff's husband was guilty of contributory negligence; that there was no proof of negligence on the part of defendant; that the court erred in its charge to the jury and in its rulings made during the trial; and that the verdict was against the great weight of the evidence.

We are of the opinion that the question of the contributory negligence of plaintiff's husband, Mr. Rodgers, was for the jury. There was evidence to sustain the finding that he stopped before entering the intersection; that he looked before attempting to cross; and that at the time he was midway through the intersection, he again made an observation to assure himself that he could safely pass in front of the oncoming cars. From this time until the instant before the collision, the taxicab, according to the evidence adduced by plaintiff, had come from a point behind the preceding car into the intersection by passing the car ahead, on the right. There was, therefore, a period of time when the taxicab was hidden from Rodgers' vision. Clarence Blandon, the driver of the taxicab, testified that the Ford car blocked his vision of Stimson avenue on the west, as he was proceeding to the intersection. It was a violation of statute for Blandon to pass the Ford at the intersection, or to pass it on its right-hand side. Whether, under all of the circumstances, Rodgers exercised due care, and whether he had the right to rely upon Blandon's observance of the law in passing the Ford, was for the jury to determine.

It is contended that the court erred in instructing the jury that if Blandon passed the Ford car at the intersection or on its right-hand side, he would be

guilty of negligence. It is urged that the fact that traffic lanes were marked on the street evidenced an intention on the part of the local authorities to permit vehicles travelling in one of the lanes to pass vehicles in another lane, either on the right or left. In support of the contention that the statutes in question are not applicable to the facts in this case, defendants cite *Piper* v. *Adams Express Co.,* 270 Pa. 54 (113 Atl. 562), where the court construed a statute which required the driver of an automobile to turn over to the right upon receiving a signal from a car approaching from the rear at a greater rate of speed, in order to let such car pass. The court held that in the absence of express law or ordinance to the contrary, a driver of an approaching car could not be held guilty of negligence as a matter of law in passing the preceding car on the right. It may be observed that the statute before the court in the cited case pertained to the duty of the driver of the car ahead to turn to the right upon signal, and did not specify the duty of the driver of the car that was approaching from the rear. Our statutory provisions are explicit with reference to such duties:

"(a) The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof, and shall not again drive to the right side of the highway until safely clear of such overtaken vehicle." 1 Comp. Laws 1929, § 4706 (Stat. Ann. § 9.1574).

"(c) The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction at any steam or electric railway grade crossing nor at any intersection of highways unless permitted so to do by a traffic or police officer." 1 Comp. Laws 1929, § 4707 (Stat. Ann. § 9.1575).

*Johnson* v. *Kinnan,* 195 Iowa, 720 (192 N. W. 863), cited by defendants, intimates, under the provisions of a statute similar to that of this State, that there

may be circumstances justifying the driver of a car, approaching from the rear, in passing a vehicle on the right-hand side. But it appears that the discussion with reference to such question was dicta, as it was held by the court that, under the facts of the case, such claimed negligence was not the proximate cause of the injuries sustained, and that the question should not have been submitted to the jury.

In this State, it is negligence as a matter of law for a vehicle approaching another from the rear to pass it at an intersection or on the right-hand side. Certain of the perils of such passing are obvious. The car in the rear, passing on the right, cannot see the signals of the driver of the car in front; and passing at an intersection, either on the right or left, adds to the perils of pedestrians and traffic on the intersection, for the vision of the driver of the car that passes another at an intersection is obstructed by the car which he passes. If there are reasons for qualifying such traffic rules with regard to passing on the right or at intersections, they must necessarily be addressed to the legislative body.

With reference to the ruling of the court sustaining an objection to the examination of a witness, through whom it was attempted to impeach another witness, we find no error. It was sought by defense counsel to lay a foundation for the impeachment of plaintiff's witness, Cokey, by showing that he had made a statement to a police officer contradicting his testimony. On the direct examination of the witness, he testified:

"The Plymouth stopped, and I could see by looking over my left shoulder there was another car coming, and, looking a little further you could see this taxi—they got it marked off for car lanes. * * *

"I heard the brakes of the taxi screech. I got out to help them pick up the cars. I was the first one there. I jumped out of the car I was in and ran over

and helped turn this one up. I did not give my name
to the police officer at that time. There was no
police officer there. I was approached by Mr. Rod-
gers concerning this accident. The same day this
accident happened I went down to the accident in-
vestigation bureau concerning the accident.''

On his cross-examination the witness testified:

''I don't know whether I made a statement down
there to one officer Henry Bent. I don't know if it
is an officer or who. I know we went to some office
and made statements.

''*Q*. Who went down with you to the bureau?

''*A*. Mr. Rodgers and the lawyer from the
Checker Cab.

''*Q*. At least somebody else besides Mr. Rodgers
went down with you to the accident investigation
bureau?

''*A*. Yes.

''*Q*. And when was that?

''*A*. 'I am not for sure' but I think it was the
next day.

''*Q*. When was it, Monday morning?

''*A*. 'I just remember.'

''*Q*. Do you remember telling the officer down
there how the accident happened in your mind?

''*A*. I don't guess he was no officer.

''*Q*. Did you ever tell one officer Henry Bent—

''*A*. No, I did not.

''*Q*. —that you never saw either car until the
time of the crash?

''*A*. No, I did not.

''*Q*. Did you ever tell Officer Henry Bent that you
were engaged in shining an automobile in that gas
station, and that you never looked up until the
crash?

''*A*. No, I did not.''

While the witness was not asked in the same
question whether he had made a certain statement
to Officer Bent at a certain time and place, we may,

for the purpose of the disposition of this issue, agree that in the course of the examination of the witness, he testified that he did not tell Officer Bent at the investigation bureau, on the day after the accident, that he had not seen either car until after the crash. With such testimony conceded as a foundation for impeachment, the following took place on the subsequent examination of the witness Bent:

"*Q.* Did you go out to see any other witness that was given to you by the accident investigation bureau?

"*A.* Yes, I did.

"*Q.* What was his name?

"*A.* Bennie Cokey.

"*Q. Where did you go to see Bennie Cokey?*

"*A. There is a gas station on the corner where the accident happened, I think on the southeast corner, if I am not mistaken.*

"*Q.* Did you have a conversation with Mr. Cokey?

"*A.* I did, yes.

"*Q.* Did he tell you how the accident happened?

"*A.* Yes.

"*Q.* What did he say about the accident?

"*Mr. Davidson:* Objected to if the court please. I do not think that is the proper way to impeach the testimony of Cokey.

"*The Court:* Objection sustained."

If it can be said that the examination of witness Cokey fixed the place of the alleged statement sought to be impeached as being *at the investigation bureau,* it can equally be said that witness Bent was asked the impeaching question with the *gas station fixed as the place* where the alleged statement was made. In order to introduce impeaching testimony, the witness to be impeached must be asked whether he made the statement in question to a certain person at a certain time and place. *Howard* v. *Patrick,* 43 Mich. 121; *Johnston* v. *Disbrow,* 47 Mich. 59; *Koehler* v.

*Buhl,* 94 Mich. 496; *Rice* v. *Rice,* 104 Mich. 371. See, also, *Monroe Lumber Co.* v. *Bezeau,* 192 Mich. 307. Upon the denial of the witness that he made such a statement at the time and place specified, or upon his refusal to admit the same, a sufficient foundation has been laid for impeaching testimony. See *Smith* v. *People,* 2 Mich. 415. A general denial by a witness that he has made a certain statement, without fixing the time and place of such statement and specifying the person to whom it is claimed the statement was made, is insufficient for impeachment. See *Smith* v. *People, supra.* Testimony impeaching a witness must be directed to a statement made to a person at a specified time and place. In this case, the witness was asked if he had made a certain statement *at the investigation bureau* and, upon his denial that he had done so, was sought to be impeached by testimony that he had made such statement *at a gasoline station.* Such testimony did not satisfy the requirements for impeachment.

In regard to the claim that the charge of the court was argumentative and resulted in prejudice, it is our conclusion that there is no basis for any claim of reversible error therein; nor can it be said that the verdict of the jury was against the great weight of the evidence. The witnesses to the accident were equally divided in number between those sustaining the plaintiff's claim and those supporting the defendants'. The weight to be given the testimony and the credibility of the witnesses were for the jury.

Judgment affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.