JAMES H. WACHTER, appellant, v. J. IVAN McCUEN, appellee.

No. 49695.

(Reported in 96 N.W.2d 597)

MAY 5, 1959.

Duffield & Pinegar, of Des Moines, and Robert L. Ulstad, of Fort Dodge, for appellant.

Boardman, Cartwright & Druker, of Marshalltown, for appellee.

THOMPSON, C. J.—On April 18, 1956, about 3:50 p.m., the plaintiff was driving his automobile south on Highway No. 14 about ten miles south of Marshalltown. A loaded gravel truck owned by the defendant and driven by one Edward Peterson, age 19, an employee, was likewise proceeding south on the same highway. Highway No. 14 is a two-lane 18-foot pavement at all material points. When plaintiff first observed the truck it was on the east or left side of the highway, moving at a speed of about five miles per hour. Plaintiff slowed his speed somewhat, but as he neared the truck it was still on the left side of the road, and he decided to pass it on its right. When he was within some fifty feet of the truck it suddenly swung to the right across the pavement. Both vehicles were then within a short distance of an overpass over the Chicago, Milwaukee, St. Paul and Pacific Railway Company's tracks. Plaintiff being then unable to stop pulled to the shoulder on his right, but was then confronted with a deep depression of some forty feet and, immediately in front of him, the abutment of the bridge over the tracks. He testified that the cab of the truck then swung to the left and he thought he could pass on the right; but as he tried to do so the truck again swung to the right and caught his car between the larger vehicle and the side of the bridge, dragging it for some distance and causing the injuries of which plaintiff complains.

The trial court submitted the case to a jury, which returned a verdict for the plaintiff in the sum of $16,249. Thereafter the defendant moved for judgment notwithstanding the verdict, and this motion was granted and judgment entered accordingly. Plaintiff has appealed.

I. While there were several grounds alleged in the motion for judgment notwithstanding verdict, the issue in this court has narrowed to the sole question of the contributory negligence of the plaintiff as a matter of law. The defendant concedes that there was a jury question as to the negligence of the driver of his truck.

In considering whether the contributory negligence of the plaintiff appears as a matter of law, we of course follow the familiar rule that the evidence must be taken in the aspect most favorable to him which is reasonably possible. But we think his own testimony is so definite on the vital question in the case that the rule has little application here. It so clearly shows his violation of section 321.299, Code of 1954, that there is no room for a jury determination of the weight of the evidence. We quote the section herewith:

"321.299 Overtaking a vehicle. The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:

"The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

"Except when overtaking and passing on the right is permitted, the driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

This section is followed by section 321.300 which makes it a criminal offense for the driver of the overtaken vehicle to fail to heed the signal provided in section 321.299; by section 321.301, relating to the burden of proof in prosecutions under section 321.300; and by section 321.302, setting out certain exceptions under which passing on the right is permissible. None of these exceptions is applicable here. The pavement was wide enough for only two lanes of traffic; and it is not contended that the driver of the offending truck was engaged in making a left turn when plaintiff attempted to pass. In fact there was no side road or farm lane between the point where the truck was located when plaintiff first observed it and the overpass where the collision occurred, into which the truck might have turned to its left.

A gravel country road known in the record as the Ferguson road comes into Highway No. 14 from the east about 450 to 500 feet north of the overpass bridge. The defendant's truck,

equipped with a two-wheel trailer, loaded with gravel, came into No. 14 from the Ferguson road. The entire outfit of the truck and trailer was about 37 feet long. It turned left upon No. 14, and proceeded south along the left or east side of the road for some distance. It was so traveling when plaintiff first observed it when he was a short distance north of the Ferguson road intersection. The reason given by the driver, Peterson, in his testimony was that new yellow lines had been painted on No. 14 that day; he had been arrested and fined $19 that morning for driving over the new paint, and he did not wish a repetition of this misfortune. He said that the newly painted yellow lines stopped about 120 feet north of the overpass bridge, so that he could then cross to the right side without danger of further prosecution. His dislike for further trouble with the law is understandable; but his way of resolving his dilemma only involved him in additional litigation. What with prosecutions in the morning and collisions in the afternoon, it is evident this was not one of young Mr. Peterson's more fortunate days.

While plaintiff said he at first thought the truck was coming toward him, then that it was stopped on the left or east side of the highway, he testified, "I realized the truck was headed in the same direction that I was going about the time I got to the gravel road." He honked his horn and applied his brakes, although not with full force. He did not apply his brakes "hard" at that time. The record further shows this from his cross-examination:

"Q. Well, now, suppose that when you sounded your horn, right at that time the truck had turned to his right and got over on the right-hand side of the road. Do you say to the jury then there wouldn't have been any accident, any collision? A. I could have gotten stopped. I'm pretty sure of it." There is also this: "Q. * * * So that we have you just about at the gravel road and the truck approximately 200 feet north of the bridge at the time you realized that it was going south on the wrong side of the road? A. I think 150 feet would probably be about more correct. And then I would say yes to your question. Q. * * * At the time you saw this truck on the wrong side of the road moving south and realized it was moving south,

your car was substantially at the gravel road and the truck was approximately 150 feet north of the bridge? A. I think that's just about right. Q. Is that a fair statement? A. That's as fair as we can get. Q. If at that time the truck at that very moment had turned to its right and gotten across to its right-hand lane, there wouldn't have been any accident, would there? A. I could have stopped."

In the often cited case of Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552, we undertook to lay down a rule for the guidance of drivers and of litigants in this class of negligence cases. With one exception, not material here, we said that failure to obey statutes or ordinances governing the use of vehicles on the highways is negligence, not merely prima-facie evidence thereof. 214 Iowa, supra, at page 915, 243 N.W., page 554. Since then we have followed that rule. Florke v. Peterson, 245 Iowa 1031, 1034, 65 N.W.2d 372, 373, and cases cited; Anderson v. Holsteen, 238 Iowa 630, 634, 26 N.W.2d 855, 858 ("This statement as to the duty of a defendant applies equally to the duty of a plaintiff who claims that he was free from negligence contributing to the injury."). It seems evident beyond argument that the plaintiff here was violating section 321.299, supra, by attempting to pass the truck on the right. This is pointed up by the provisions of section 321.302 which state the exceptions to the rule. We must consider that the legislature meant these to be the only exceptions; if others had been intended they would have been stated. Likewise we have section 321.300 which seems to have been enacted specifically in contemplation of such a situation as arose here. Following the provisions of section 321.299 which require the driver of the overtaken vehicle to give way to the right on audible signal, section 321.300 makes it a misdemeanor for him to fail to do so; and section 321.301 deals with the burden of proof as to whether the signal was heard.

There is no intimation in any of these sections that one who finds his passage to the left blocked by a vehicle in the center or on the left side of the road may thereupon and without violation of the statute pass on the right.

There is, of course, a further question in many cases

826

as to whether the violation of a statute, which is negligence per se, is contributory negligence. That is to say, did the negligence contribute directly or indirectly in any degree to the accident and resulting injuries? In several cases cited by the plaintiff it was held that there was a jury question on this point; and of course we are fully cognizant of the rule that contributory negligence is ordinarily a question to be determined by the triers of fact and it is only exceptionally the court can say as a matter of law either that there was negligence of the plaintiff or that it contributed to the injury. But here we have the negligence established as a matter of law by the violation of the statute; and under the circumstances the fact that it contributed to plaintiff's injuries is not debatable. If he had not been passing on the right he would not have been struck; it was his violation of the statute that placed him in the position which resulted in his injuries. How much of the collision was attributable to him, which of the parties was guilty of the greater fault, is not in issue as long as the plaintiff's statutory violation was at least a contributing cause.

██ II. But the plaintiff urges that the conduct of the driver of the truck created a sudden emergency which gave a legal excuse for his violation of the statute. In Kisling v. Thierman, supra, at page 916 of 214 Iowa, page 554 of 243 N.W., we defined "legal excuse." We said the term means:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4. Where a statute specifically provides an excuse or exception."

██ It is evident that there was nothing here which made it impossible to comply with the statute or placed the plaintiff's car in a position contrary to the provisions of section 321.299. He could have stopped, as his testimony shows; in fact, if he had slowed somewhat more than he did he would have found

the truck returning to its right side of the road so that he could have passed on the left. He chose to violate the statute rather than to slow down and await developments. Nor was he within any excuse or exception specifically provided by the statute.

As to the third ground of legal excuse set out above, it must be conceded that an emergency arose. In fact, there is an emergency in every collision of motor vehicles. But the emergency which excuses a violation of a statute must be one to which the violator did not contribute; it must be one "not of his own making." Fagen Elevator v. Pfiester, 244 Iowa 633, 640, 56 N.W.2d 577, 581. That an emergency was present when plaintiff had, in violation of the statute, driven within such a distance that he could not stop when the truck swung to the right is undoubted. But plaintiff had voluntarily placed himself there; the emergency was, at least in considerable part, of his own making.

In Florke v. Peterson, supra, at pages 1037, 1038 of 245 Iowa, page 376 of 65 N.W.2d, we quoted with approval from Bush v. Harvey Transfer Co., 146 Ohio St. 657, 664, 665, 67 N.E.2d 851, 855, 856: " 'Since the failure to comply with * * * a safety statute constitutes negligence per se, a party guilty * * * cannot excuse himself * * * by showing that "he did or attempted to do what any reasonably prudent person would have done under * * * similar circumstances." A legal excuse must be something that would make it impossible to comply with the statute.' "

The plaintiff relies upon Jeck v. McDougall Construction Co., 216 Iowa 516, 246 N.W. 595. Here an asphalt mixer was stopped on the highway after dark, and there was a jury question as to whether it was lighted. The plaintiff's decedent, driving in the same direction in which the machine had been headed, came upon it suddenly and attempted to pass on the right, with the result that his car collided with a part of the mixer and he was killed. This, we think, was a true illustration of an emergency not of the plaintiff's own making. It is not factually in point here.

III. It would not be fair to repay the diligent efforts of counsel for the plaintiff by closing this opinion without giving some attention to the other authorities cited in support

of their appeal. Johnson v. Kinnan, 195 Iowa 720, 725, 192 N.W. 863, 866, comes closest to supporting plaintiff's position. There we said that "Prima facie, it is negligent to make the passage on the right of the advance vehicle. It may, however, be a question of fact, under all the circumstances, as to whether it was negligence in a given case for the driver of the rear vehicle to attempt to pass the advance vehicle on the right * * *." This case gave the Michigan Supreme Court difficulty in its consideration of Rodgers v. Blandon, 294 Mich. 699, 294 N.W. 71, 73; but it decided that the discussion above-quoted was dicta, since it was eventually held there was no evidence to show that the passing on the right, if there was such, was a proximate cause of the plaintiff's injury. The statute on passing on the right was somewhat different at that time from the way it appears in the Codes of 1954 and 1958; but in any event the case was decided before we had clarified the law in Kisling v. Thierman, supra, and had definitely held that, except for the section requiring yielding to the right on meeting another vehicle, all statutory violations are negligence per se. As we there said, "This apparent conflict in our opinions should be eliminated and a definite and certain rule fixed so that the bench and bar will have a definite guide in the trial of cases of this kind." 214 Iowa at page 915, 243 N.W., page 554.

Other authorities cited may be briefly distinguished. In Robson v. Barnett, 241 Iowa 1066, 1069, 44 N.W.2d 382, 384, we said: "Plaintiff had violated no statute." The question was a fact one as to excessive speed. Brewer v. Johnson, 247 Iowa 483, 72 N.W.2d 556, states the rule that violation of a safety statute is negligence per se; but under the fact situation there we held there was a jury question on contributing cause. No statutory violation was discussed in Arenson v. Butterworth, 243 Iowa 880, 54 N.W.2d 557; the negligences claimed were speed, lookout and control, which we held to be fact questions. Fischer v. Hawkeye Stages, 240 Iowa 1203, 37 N.W.2d 284, holds only that whether a statutory violation contributed to plaintiff's injuries was a fact question. In Lawson v. Fordyce, 234 Iowa 632, 12 N.W.2d 301, the plaintiff was leading a cow along the highway, walking on the right-hand side of the road, in violation of statute, when defendant's car came up behind

and, without warning, attempted to pass; thereby frightening the cow so that she jumped against plaintiff and injured him. We held that the question of proximate cause was for the jury, since reasonable men might conclude the cow would have been as frightened if she had been on the left side of the road as she was when on the right.

In Coon v. Rieke, 232 Iowa 859, 6 N.W.2d 309, the questions were again speed, control and proximate cause. Carlson v. Meusberger, 200 Iowa 65, 204 N.W. 432, involved the question whether failure to sound a horn when approaching an intersection was contributory negligence on the part of the driver. Because the noise of the operation of the car itself was heard by a witness considerably farther away than the driver of the other approaching car, we said the question of proximate cause was for the jury. With the possible exception of Johnson v. Kinnan, supra, none of these cases is in any way in conflict with our holding in the case at bar. The plaintiff cites many cases from foreign jurisdictions, which space will not permit us to analyze. We have considered them, and find them generally not in point. At least one—Padgett v. McKissick, 138 Okla. 63, 280 P. 409, supports plaintiff's position. On the other hand, the Pennsylvania cases cited, if they were ever applicable, seem to be negatived by the recent case of Shakley v. Lee, 368 Pa. 476, 478, 84 A.2d 322, 323. There, on a three-lane highway, defendant's truck was traveling in the center lane, when it suddenly swung to the right and collided with plaintiff's car which was passing on the right. Section 1007 of the Pennsylvania Code, much like our section 321.299, prohibited passing on the right. Upon trial, verdict was rendered for the plaintiff; whereupon the trial court granted defendant's motion for judgment notwithstanding. On plaintiff's appeal, the Supreme Court of Pennsylvania affirmed, saying:

"Different considerations apply to decedent's violation of section 1007. * * * It is * * * obvious that if decedent had held back until the truck came over ahead of him into the southbound lane and had then himself entered the center lane and passed the truck on its left instead of on its right in violation of the statute, the accident would not have happened;

accordingly, such violation, being clearly a contributing cause of the accident that followed, justified the action of the court below in entering judgment for defendant n.o.v."

Rodgers v. Blandon, 294 Mich. 699, 704, 294 N.W. 71, 73, supra, says: "In this state, it is negligence as a matter of law for a vehicle approaching another from the rear to pass it * * * on the right-hand side. Certain of the perils of such passing are obvious."

Indeed, the "perils of such passing" are illustrated in the case at bar. Our own holdings are definite that violation of a safety statute, with the one exception noted, is negligence per se; and, under the facts here, there can be no fair debate that the negligence contributed to plaintiff's injuries. The trial court ruled correctly in entering judgment for defendant notwithstanding the verdict for plaintiff.—Affirmed.

All JUSTICES concur.