Thomas L. JENKINS, Appellant,

v.

Melvin BIERSCHENK and Viola E. Bierschenk, Appellees.

No. 17351.

United States Court of Appeals
Eighth Circuit.

June 22, 1964.

**422**

John D. Randall, Cedar Rapids, Iowa, made argument for the appellant and filed brief.

Ralph W. Gearhart, Cedar Rapids, Iowa, made argument and filed brief with Caryl Garberson, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for appellees.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

BLACKMUN, Circuit Judge.

■ Thomas L. Jenkins sustained injuries to his person and damage to his automobile when it and one owned by Melvin Bierschenk collided on a public highway west of Cedar Rapids, Iowa, in the late afternoon of August 27, 1960. Jenkins brought this diversity action against Bierschenk and his wife who, with permission, was driving the car at the time of the accident. The case was tried to the court without a jury. Judge Delehant rendered judgment for the defendant and filed a supporting memorandum which is not reported. The law of Iowa of course controls.

Many of the facts are not in issue. Jenkins, age 33, was driving his 1953 Plymouth from California, where he had worked as a physicist, to Ohio, where he was to assume an assistant professorship at Case Institute. He was alone. The weather was clear and the road was dry. The highway where the accident occurred ran east and west. It was 24 feet wide and afforded an unobstructed view. Jenkins was on his own side of the two lane highway.

Bierschenk was a Benton County, Iowa, farmer. Mrs. Bierschenk, with two of their children accompanying her, was going west. Her automobile, a 1955 Mercury with more than 79,000 miles

on it, veered from its path in the north lane "almost a foot" to its right and then veered back southwesterly across the center line where its left front struck the left front of the Jenkins car in, as the trial court found, "the extreme south portion" of the latter's lane. Each vehicle at the time was traveling between 45 and 50 miles per hour, well under the posted limit. After the impact the Jenkins car came to rest on its side south of the pavement and well off the highway. The Bierschenk automobile stopped upright more than 100 feet west of Jenkins', facing west at the south edge of the pavement and with its right front wheel flared out at an angle.

The Bierschenks purchased their car new in 1955 from a Vinton, Iowa, dealer. It was used generally as a family vehicle driven by Mr. and Mrs. Bierschenk and by their son Dennis after he reached 16 in January 1958. Its use was a normal one but it saw service on gravel roads and two or three times a year at haying time it was driven into the field. Prior to August 27, 1960, the Mercury had been involved in accidents when Dennis was driving. Once it sustained damage to the front end; on another occasion it struck a pig; and at another time its rear was damaged when Dennis backed the Bierschenk pickup truck into it.

Bierschenk had his automobile serviced and repaired from time to time and greased about every 4,000 miles by the Vinton dealer. Prior to August 11, 1960, Bierschenk was aware that the car had developed a front wheel "shimmy" and substantial wear on the front tires. He purchased new tires for the front wheels. The service station operator who sold him the tires recommended that the wheels be realigned. The family at the time was contemplating a vacation trip to the Canadian border. Bierschenk took his car to the dealer on August 11. A charge of $40.69 for labor and materials was incurred. This work included, among other things, the alignment of the front end, replacement of tie rods, new spark plugs, a new ignition switch, adjustment of the carburation and the timing and

---

checking the points and front door catches. The mechanic tested the car on the road after this work and found it to operate properly at that time.

The highway surface where the accident occurred was concrete with blacktop repair. There is evidence that it had deteriorated somewhat in a preceding winter. Near the north edge of the pavement, east of the impact site, was an egg-shaped depression. This was about one foot (north and south) by six inches (east and west) with a depth up to an inch and a half. In the photographs introduced in evidence this depression does not show and its site had to be marked.

Jenkins testified that as the Bierschenk car approached him he saw its right front drop "a few inches" and some dust or smoke there, just before it veered, first to the north and then to the south, into his lane. The two Bierschenk children who were passengers in the car said that they felt a jolt as they approached the plaintiff. Mrs. Bierschenk testified that "all of a sudden something went wrong with the car and I couldn't control it". The pavement at the collision area disclosed tire marks and gouges which the trial court found were "attributable to contact between the pavement and metallic portions of the vehicle's sub-structure".

The defense theory is that the right front lower ball joint on the Bierschenk vehicle had weakened from metal fatigue and had broken without notice to the Bierschenks; that this resulted in a failure in the car's steering mechanism; and that the court properly found and concluded that there was no negligence on the part of the Bierschenks.

Under Iowa law the plaintiff has the burden of establishing affirmatively that he is free from contributory negligence. Beezley v. Kleinholtz, 251 Iowa 133, 100 N.W.2d 105, 107 (1959); Northern Natural Gas Co. v. Roth Packing Co., 323 F.2d 922, 924 (8 Cir. 1963). This case presents the situation of a plaintiff driving on his half of a public highway at a speed which was reasonable under all the circumstances and yet sustaining personal injury and property damage from an opposing car in his lane. Although the defendants by their pleading denied the plaintiff's allegation of no contributory negligence on his part, there is nothing in this record which could support a conclusion of contributory negligence. The trial court held that the plaintiff had sustained his burden in this respect and the point is not before us on appeal. We therefore have a clear case of injury and damage to a plaintiff who was himself without fault. Our question thus is whether the defendants were without fault and the accident was an unavoidable one with no liability.

Judge Delehant treated separately, and with his customary careful and meticulous attention to detail, the plaintiff's allegations as to Mrs. Bierschenk's failure to yield half the highway, lack of control, improper lookout, and excessive speed. He found and concluded that there was no negligence as to any of these; that her car's digression was not due to any act or omission on her part or defect of which she or her husband should have been aware; that she had the vehicle under control until that control was lost through circumstances for which she was not accountable; that she maintained a proper lookout and was aware of Jenkins' approach; and that she was driving at a reasonable speed. The court answered the plaintiff's suggestions (a) as to Dennis' misfortunes with the car by finding that these did not impair its condition or safety; (b) as to the automobile's occasional farm use by observing that "no rough usage of the vehicle is shown by the evidence" and that a modern automobile is sturdily constructed; (c) as to Bierschenk's being remiss in regularity of maintenance service by noting that the evidence supported no such inference and showed service and repair "with reasonable frequency and regularity"; and (d) as to negligence in the work performed by the dealer on August 11 by holding there was nothing in the evidence which proved this or that the

ball joint was then in such condition that a defect existed or could have been detected by a mechanic's reasonable inspection.

The court then reviewed the post-collision investigation of the Bierschenk automobile. This showed that there was a complete severance of the ball joint at the lower screw thread. The steel bolt had undergone a "typical steel fatigue failure" at some time prior to the collision and was no longer strong enough to withstand the stress to which it was subjected. He felt that the exact cause of the stress which precipitated the final rupture could not be declared with finality and that the defendants' suggestion that the passage of the wheel over the depression in the pavement may have been a factor was not proved and at most was only a probability.

The statute which primarily concerns us here is Iowa Code § 321.298, I.C.A. This is the usual one, applicable to a public highway, requiring travel on the right half when passing another vehicle. The Supreme Court of Iowa, in McMaster v. Hutchins, Iowa, 120 N.W.2d 509, 513 (1963), decided just one week before the date of the trial court's memorandum in the present case, now tells us that a violation of this statute "is only prima facie evidence of negligence, not negligence per se or as a matter of law"; that non-compliance with the statute "may be justified by evidence the motorist was in the exercise of reasonable care under the circumstances"; that, however, violation of other Iowa statutory rules of the road is negligence; and that violation of those other statutory rules may be justified only by showing one of the four legal excuses recognized in Kisling v. Thierman, 214 Iowa 911, 916, 243 N.W. 552, 554 (1932). The first three of these excuses are:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute."

■■ It follows, from these precepts of Kisling and McMaster, that, so far as the Bierschenk automobile's mere presence in the south lane of the highway, standing alone, is concerned, the defendants would need only to show "the exercise of reasonable care under the circumstances". A simple fact situation to which this might have application would be the existence of an obstruction in the right lane and the consequent necessity for a driver to go around it. Our facts here, however, are more complex than this and the defense bases its case on the legal excuses of Kisling. As to these, it assumes the burden of proof.

In its memorandum the trial court set forth what it regarded as the applicable Iowa law. Although it obviously did not at the time have the benefit of the McMaster opinion, it concluded that the plaintiff had the burden of proof as to negligence of the defendants and as to proximate cause; that this did not mean, and the court did not require, that the plaintiff had to prove that no emergency existed which would operate as a legal excuse for the defendants; that it was incumbent on the defendants to sustain their contentions of legal excuse; and that, however, before this burden was to be cast upon the defendants, the plaintiff must first establish an act or omission which, if unexplained or unexcused, constituted actionable negligence.

While there may be some difference in expression between the Iowa court and the trial court, we are convinced that the latter's concept of the applicable and controlling Iowa law was in no material respect at variance with the McMaster principles noted above. It is not really contended otherwise here. This leaves us then with only evidence questions.

1. The admission of the ball and socket assembly. The plaintiff's argument

is that the joint was removed from the Bierschenk car by an insurance company adjuster; that it was kept by him for about a week and then mailed to his automobile damage supervisor who retained custody of it until it was forwarded to an attorney for the Bierschenks; that no mark was placed upon it; that the only identification was that of the adjuster who, because of his employment with the insurance company, the real party in interest, was necessarily biased and interested; that there was no showing that the joint was kept in the condition it was when removed from the car; and that all this leads to the suspicion that the exhibit was either not in that same condition or was not the Bierschenk joint.

■■ We are not convinced. Credibility of a witness is for the trier of the facts. The plaintiff concedes that the admission of the exhibit was largely a matter for the trial court's discretion. There was identification here, particularly through the abrasion mark. The identification, although not perfect, was legally sufficient. We are reminded that this court more than once has said,

> "In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." Builders Steel Co. v. Commissioner, 179 F.2d 377, 379 (8 Cir. 1950); Collins v. Owen, 310 F.2d 884, 885–886 (8 Cir. 1962); Pritchard v. Downie, 326 F.2d 323, 326 (8 Cir. 1964).

■■ 2. The failure of the defendants to call Dennis Bierschenk as a witness. The suggestion here is the obvious one that this failure raised a presumption that Dennis' testimony would be unfavorable to the defendants. This court's attitude was recently expressed by Judge Van Oosterhout in Shoenberg v. Commissioner, 302 F.2d 416, 420 (8 Cir. 1962), when he said:

> "We have serious doubt whether in a situation such as is presented here, where the witness was apparently equally available to both parties, any presumption should flow from the failure of either party to call such witness. Any rule creating a presumption from failure to produce a witness must be applied with caution."

There is nothing which indicates that Dennis was not equally available as a witness to both the plaintiff and the defendants. No discovery procedure as to Dennis was employed. We adhere to our comment that any rule creating a presumption of this kind is to be applied with caution and we agree with the trial court that "there must be a reason for such a supposition, and a factual area within which it may logically operate. The supposition must rise above the level of mere possibility. The present case provides no such setting * * *". There was no reversible error in the court's refusal to draw an inference adverse to the defendants.

3. The sufficiency of the evidence. We suspect that much of the difficulty on this point is due to the fact that some of the questioning of the expert witnesses had to do with whether the break in the ball joint was caused by the front wheel striking the depression in the pavement or was caused by the collision itself, and the trial court's refusal to accept either of these as the cause of the break. The plaintiff argues that there is nothing to indicate that the joint broke before the actual collision and that the court should have found that it was speed and lack of attention which led to the accident.

■ This approach is largely an argument for the trier of fact and not for

us. Our task is only the usual one, that is, to determine whether the evidence is sufficient to justify the conclusion which the trier of fact, here the court, did reach. The well established standards for appellate review were outlined by Judge Ridge in the recent Iowa case of Barryhill v. United States, 300 F.2d 690, 693–694 (8 Cir. 1962).

We have no great difficulty in concluding that the evidence was sufficient. That the joint broke at the root of the thread is not contested. That it broke before the collision and occasioned it finds adequate support in Mrs. Bierschenk's testimony as to her loss of control and sudden inability to steer; in the two children's testimony as to the jolt; in the irresponsible veering of the car; in the gouge marks on the road; and in the fact the two vehicles came together with their left fronts overlapping, whereas the joint, being on the right, was not at the impact site. And the court's conclusions that the Bierschenks were not negligent in the use and maintenance of their car and in her driving at the time of the accident, and that any negligence in this respect was not a proximate cause of the collision, are supported by the service and repair, with some regularity at least; by the particular August 11 servicing of the automobile by an experienced mechanic; by the mechanic's testimony that, on road test thereafter, the automobile operated normally; by the absence of evidence as to unduly rough usage; by the fact the place in the ball joint where the break occurred is not lubricated and receives no routine service and thus was not directly affected by the frequency of greasing and oil changes; by the fact the speed of the car was well below the posted limits; and by the absence of construction or other significant special circumstance in the immediate area of the accident site.

Of course, there are opposing factors which have aroused the suspicion of the plaintiff: Bierschenk's intimation that the car had some shimmy even after August 11; Dennis' misadventures; the concession as to some field use; the

mileage; and the oil and grease jobs at less than recommended frequency. But all this, as we have noted above, largely constitutes argumentative material for the trial court. It did not prove convincing there. That it might convince us, were we sitting as the trier of fact, is not significant. We just cannot say that there is not enough here to support the trial court's conclusions under the Iowa standards established in McMaster v. Hutchins, supra. The unfortunate result is that this law-abiding and non-fault plaintiff has been injured and damaged and finds himself without recourse against the owners of the instrumentality which harmed him. On this record, however, we have no power to upset that result. What a jury would have determined no one knows.

Affirmed. Costs with respect to the printing of the supplemental record are denied.