CHICAGO, ROCK ISLAND AND PACIF-
IC RAILROAD COMPANY, a Cor-
poration, Appellant,

v.

Coleen J. BRECKENRIDGE, Administra-
trix of the Estate of Edward A. Breck-
enridge, Deceased, Appellee.

No. 17571.

United States Court of Appeals
Eighth Circuit.

July 14, 1964.

Allen O. Perrier, Des Moines, Iowa, made argument for appellant and filed brief with B. A. Webster, Jr., Des Moines, Iowa.

Ennis McCall, Newton, Iowa, made argument for appellee and filed brief with L. L. Brierly, Newton, Iowa.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by defendant rail-road from a judgment entered against it

upon a jury verdict in an action by plaintiff administratrix for the wrongful death of her husband, Edward A. Breckenridge, as a result of the truck he was operating being struck by defendant's train at a railroad crossing in Colfax, Iowa, about 2:15 p.m. on December 13, 1960. The crossing was protected by an automatic signal device approved by the appropriate Iowa department, and said device, including its bell, stop sign and flashing red lights were in operation at the time of the collision. Liability is predicated upon negligence. Jurisdiction, based upon diversity of citizenship, is established.

■ Defendant, at the close of plaintiff's evidence and again at the close of all the evidence, made appropriate motions for directed verdict, adequately raising the points relied upon for reversal hereinafter discussed. In ruling upon the last motion, the trial court observed that the question presented was very close, that it would refrain from expressing its view, that the submission of the case to the jury would lead to a final disposition of the case and that if any error was made, it could be corrected without the necessity of a new trial. We have heretofore suggested and approved such procedure with relation to motions for directed verdict in close cases.

Within ten days after final judgment, defendant filed a Rule 50(b) motion for judgment n. o. v. or in the alternative for a new trial. Notice of such motion was not served until after the expiration of the ten days. The court overruled such motion as amended to secure an enlargement of time upon the ground that it had not been timely served and that exceptional circumstances excusing such failure were not established. The court's ruling clearly states that no view upon the merits of the motion is expressed. While defendant appealed from the ruling on the motion as well as from the judgment, no contention is here made that the court erred in denying the motion upon the ground that it was not timely served. Hence, such issue requires no consideration.

Defendant in the trial court urged that the plaintiff had failed to establish any negligence on the part of the defendant. Such issue is not raised upon this appeal. We may assume for purposes of appeal that actionable negligence on the part of the defendant is established. It is therefore unnecessary to go into the somewhat extensive, conflicting evidence relating to plaintiff's specifications of negligence. The evidence with respect to the defendant's negligence is material only to the extent that it bears upon the contributory negligence issue.

Defendant's contention that plaintiff's decedent was guilty of contributory negligence as a matter of law is based upon two propositions, to wit: (1) Mr. Breckenridge violated § 321.341, Iowa Code Annot., in failing to stop before reaching the railroad crossing in response to the automatic signal and that such conduct constitutes negligence per se and that no legal excuse is established. (2) Plaintiff has offered insufficient evidence to support a finding that Mr. Breckenridge was exercising reasonable care for his own safety.

■ Under Iowa law, plaintiff in an action based upon negligence has the burden of pleading and proving freedom from contributory negligence. Jenkins v. Bierschenk, 8 Cir., 333 F.2d 421; Illinois Central R. R. v. Stufflebean, 8 Cir., 270 F.2d 801, 805; Chicago, R. I. & P. R. R. v. Lovejoy, 8 Cir., 206 F.2d 77, 82; Mast v. Illinois Cent. R. R., N.D.Iowa, 79 F.Supp. 149, 159, aff'd, 8 Cir., 176 F.2d 157.

Judge Graven in Mast and this court in Mast, Lovejoy and Stufflebean deal extensively with the peculiar Iowa rule as to contributory negligence. Such cases support the following conclusions: Contributory negligence upon the part of an injured person ordinarily presents a fact issue but if there is a failure of proof on the freedom from contributory negligence issue, defendant is entitled to a directed verdict. If plaintiff is guilty of negligence which contributes in any manner in any degree directly to his injury, recovery is barred.

It is defendant's contention that plaintiff's decedent violated § 321.341, Iowa Code Annot., which reads:

"Obedience to signal of train

"Whenever any person driving a vehicle approaches a railroad grade crossing and warning is given by automatic signal or crossing gates or a flagman or otherwise of the immediate approach of a train, the driver of such vehicle shall stop within fifty feet but not less than ten feet from the nearest track of such railroad and shall not proceed until he can do so safely.

"The driver of a vehicle shall stop and remain standing and not traverse such a grade crossing when a crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a train."

In Kisling v. Thierman, 214 Iowa 911, 915, 243 N.W. 552, 554, the Supreme Court of Iowa cleared previously existing confusion in the Iowa cases with respect to the effect of a violation of the statute. The Court thus states the law to be applied:

"Statutes and ordinances such as these under discussion are a legislative prescription of a suitable precaution, or a fixing by law of the standard of care which is required under the circumstances, and it must follow that a failure to observe the standard of care thus fixed by law is negligence.

"In other words, accurately speaking, where the statute or ordinance has fixed the standard of care, the failure to observe such standard is negligence, and when in the trial of a case—the other elements being proven—it is shown that the defendant failed to observe the standard of care thus fixed, a case is made for the jury in the first instance. In such case, the defendant may offer proof excusing his failure to observe such legal standard of care. If, however, he fails to furnish proof of such legal excuse, then it is accurate to say that negligence is established as a matter of law.

"With this thought in mind and in accord with this idea, a court is warranted in saying to the jury that if the defendant failed to observe the standard of care thus fixed by statute, he is guilty of negligence, unless he has shown a legal excuse for failure to observe the requirements of the statute or ordinance, and in case he has so shown such legal excuse, he is not guilty of negligence. By the term 'legal excuse' is meant:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4. Where a statute specifically provides an excuse or exception."

The Kisling ruling applies to contributory negligence. In Wachter v. McCuen, 250 Iowa 820, 825, 96 N.W.2d 597, 600, the court after reaffirming the Kisling rule, states:

"There is, of course, a further question in many cases as to whether the violation of a statute, which is negligence per se, is contributory negligence. That is to say, did the negligence contribute directly or indirectly in any degree to the accident and resulting injuries? In several cases cited by the plaintiff it was held that there was a jury question on this point; and of course we are fully cognizant of the rule that contributory negligence is ordinarily a question to be determined by the triers of fact and it is only exceptionally the court can say as a matter of law either that there was negligence of the plaintiff or that it con-

tributed to the injury. But here we have the negligence established as a matter of law by the violation of the statute; and under the circumstances the fact that it contributed to plaintiff's injuries is not debatable. If he had not been passing on the right he would not have been struck; it was his violation of the statute that placed him in the position which resulted in his injuries. How much of the collision was attributable to him, which of the parties was guilty of the greater fault, is not in issue as long as the plaintiff's statutory violation was at least a contributing cause."

The Iowa court has consistently followed the Kisling rule except with respect to violations of § 321.298, not here involved.

The burden is upon the party charged with negligence per se to establish legal excuse. McMaster v. Hutchins, Iowa, 120 N.W.2d 509, 513; Jenkins v. Bierschenk, supra.

The reasoning underlying the Kisling rule applies to our present situation. Section 321.341 is a safety regulation prescribing the care to be exercised by motorists approaching a railroad crossing protected by an approved warning device. Such statute is found in Chapter 321 relating to "Motor Vehicles and Law of Road" and is the first of a series of thirteen consecutive sections under the title "Special Stops Required". Among such statutes are those presenting the more common situation with respect to requiring motorist to stop before entering a through highway.

In Chicago, B. & Q. Ry. v. Ruan Transp. Corp., 8 Cir., 171 F.2d 781, an Iowa case involving a collision of plaintiff's gas truck with a train at a highway intersection not protected by automatic signals, it was asserted that plaintiff was guilty of contributory negligence as a matter of law because he failed to stop before crossing the track as required of gas trucks by § 321.343. Such section appears under the same title as the statute involved in our present case. We

upheld such contention and determined that the trial court erred in refusing to direct a verdict upon defendant's motion. See Pennsylvania R. R. v. Folger, 6 Cir., 170 F.2d 238.

In Van Patten v. Chicago, R. I. & P. R. R., 251 Iowa 1221, 102 N.W.2d 898, the Iowa court had occasion to consider § 321.341. The plaintiff's truck was struck by a train at a railroad crossing. The crossing was protected by an automatic signal similar to that in the present case. There was a defect in power and hence the flashing light and bell were not operating but the cutoff of the current had automatically caused the signal stop sign to be turned to face traffic. Van Patten contended § 321.341 did not apply as to stop signs which remain turned toward traffic, whether a train was approaching or not. The court rejecting such contention states:

"In the instant case surely the stop sign was not an assurance it was safe to cross. It should put any reasonably prudent person on his guard. When a flagman waves a stop sign it warns traffic to stop. In this case the sign was put in place mechanically upon failure of the electric current but none the less it was a warning to stop. Does one operating a motor vehicle have a right to ignore such sign when there is actually imminent danger and say it means nothing? The state highway commission has placed many similar stop signs upon this primary highway and failure to observe their mandate often subjects the violator to punishment. The presence of the stop sign foreclosed the right of the traveler, observing the automatic signals were not working, to presume he could proceed with safety. The stop sign warned him he could not do so." 102 N.W.2d 898, 902.

The court majority determined that the plaintiff was guilty of contributory negligence barring recovery.

Under § 321.341, plaintiff upon approaching an operating automatic signal is required to stop not less than ten feet

from the track. The statute further provides that he shall not proceed until he can do so safely.

The evidence must, of course, be viewed in the light most favorable to the plaintiff. Plaintiff offered no evidence as to care exercised by her decedent. Defendant offered witnesses who observed the movements of decedent's truck immediately prior to the collision. The trial court held that there were eyewitnesses to the accident and hence the Iowa rule that permits a presumption of due care on the part of the decedent in the absence of an eyewitness to mitigate the burden placed upon the plaintiff to establish freedom from contributory negligence does not apply. For a thorough discussion of the no eyewitness rule, see Mast v. Illinois Cent. R. R., N.D.Iowa, 79 F.Supp. 149, 164–173; Chicago, R. I. & P. R. R. v. Lovejoy, 8 Cir., 206 F.2d 77, 81.

Plaintiff does not here contend that the court erred in denying her the benefit of the no eyewitness rule.

We will briefly state the relevant facts to which the law as above stated must be applied. The main line of the Chicago, Rock Island & Pacific R. R. runs east and west through Colfax near the north edge of the business district. Walnut Street is the principal north-south street in Colfax and is also the town route of a state highway. The accident occurred at the point the main track of the railroad crosses Walnut Street. The main track is the third track when approaching from the south and it is protected by an approved automatic signal consisting of a bell, flashing red lights and a stop sign facing traffic. The evidence is overwhelming and virtually undisputed that the signal device was in operation immediately preceding the collision for a sufficient time to warn the decedent and afford him ample opportunity to make the stop required by statute.

Defendant offered the evidence of its inspector and others that the stop signal operated properly for the full twenty seconds provided by regulation when officially tested the day before the accident and again shortly after the accident. Plaintiff offered evidence of two witnesses who stated that the interval as disclosed by their observations was about ten to fifteen seconds. From the undisputed evidence as to decedent's very slow speed and his location, even a ten second interval would have afforded decedent ample opportunity to stop before reaching the crossing.

Immediately prior to the collision, Mr. Breckenridge was driving his gravel truck north on Walnut Street toward the railroad crossing. The day was bright, dry and clear. A witness, Dean Chandler, was driving his automobile just ahead of Breckenridge. He observed the operating signal when about one and one-half blocks south of the main track. He turned into a parking lot south of the track. Witness Max Bucklin, who followed Breckenridge in a northerly direction for a number of blocks continuously to the accident scene, testified that he observed the signal before he reached Front Street. The center of Front Street is 175 feet south of the main track. At the time, decedent was about 50 feet north of him and had slowed down to four to five miles per hour and decedent continued at that speed without changing his course onto the main track where he was hit broadside. Witness Cecil Ogburn, who was having a haircut in a barber shop located at the southeast intersection of Front and Walnut, first saw the Breckenridge truck as it passed the Front Street intersection. At that time the flashing light and bell of the signal were operating. He heard the train whistle. He continued to observe the truck. It did not stop but continued at a slow rate of speed into the path of the train. Roy Klippinger, who operated a gas truck headed north, ahead of the Breckenridge truck, saw the signal start operating shortly before he reached the main track and as he safely passed the crossing saw the train about one thousand feet west.

The Rocket train with which decedent collided arrived in Colfax regularly during the preceding several years at ap-

proximately 2:15 p. m. and was substantially on schedule on the day of the collision. Decedent was thoroughly familiar with the crossing and the train schedule.

Plaintiff has offered no substantial evidence to contradict the foregoing evidence offered by the defendant.

While plaintiff makes a broad claim that the violation of § 321.341 does not constitute negligence per se and states that "the Kisling case * * * does not so hold nor is it the law of the state of Iowa", no authorities are cited in support of such proposition.

Plaintiff relies upon cases where the negligence per se doctrine arising out of violation of a safety statute is not involved and numerous cases stating the familiar rule that the issue of contributory negligence is ordinarily for the jury. No purpose will be served by a detailed discussion of such cases as they are not applicable to the factual situation here presented. Langham v. Chicago, R. I. & P. Ry., 197 Iowa 1118, 198 N.W. 525, cited by plaintiff, involves an automatic signal but said case was decided in 1924, prior to the enactment of the statute here involved and prior to the Kisling decision.

Kinney v. Larsen, 239 Iowa 494, 31 N.W.2d 635, also relied upon by plaintiff, does not involve automatic signals or a negligence per se situation. It is noted that in Kinney, which deals with the reasonably prudent man standard, the Supreme Court reversed for error in failing to direct a verdict for the defendant.

Plaintiff alternatively invokes the legal excuse defense by way of conclusion without supporting facts or authorities. Legal excuse as recognized by the Iowa court is defined in the excerpt from Kisling, supra.

Plaintiff has offered evidence as to the partial obstruction in the view of the approaching train by reason of the location of the depot and a car parked on the siding, and also evidence with respect to the rough and uneven condition of the roadbed at the crossing. Plaintiff has likewise offered evidence that the signal has operated for a considerable period, up to an hour, on occasions when no train was approaching. In all of such instances, however, there was a train switching in the yards or parked on the track while the men were out for lunch.

Such evidence does not either individually nor collectively establish legal excuse for decedent's failure to observe the statute. Van Patten v. Chicago, R. I. & P. R. R., supra; Wachter v. McCuen, supra; Florke v. Peterson, 245 Iowa 1031, 65 N.W.2d 372. In the Florke case, the court after finding the violation of the statute to be negligence per se and that legal excuse for the violation had not been established, observes:

"The fact that courts recognize there may be a 'legal excuse' for statute violation is quite different from permitting the violator to invoke the common law rule of reasonable care or the care which a reasonably prudent man would exercise under like circumstances.

* * * * *

" 'Evidence of due care * * * does not furnish an excuse or justification for the negligence presumed to arise on proof of violation of the ordinance.' Gallichotte v. California Mutual Building & Loan Ass'n, 4 Cal.App.2d 503, 41 P.2d 349, 351.

"We must conclude here there was no evidence to carry the case to the jury. It was a question, not of freedom from but of legal excuse for, contributory negligence. There was nothing shown that made compliance with the statute impossible, nothing over which plaintiff had no control that placed his car in a position violative of the statute, nor any emergency not of his own making by reason of which he failed to obey it.

"The statute demands something more than 'ordinary care;' or, perhaps more accurately, it increases the requirements of ordinary care. * * * *" 65 N.W.2d 372, 376.

In the Wachter case the court inter alia states:

" 'Since the failure to comply with * * * a safety statute constitutes negligence per se, a party guilty * * * cannot excuse himself * * by showing that "he did what any reasonably prudent person would have done under * ** * similar circumstances." A legal excuse * * * must be something that would make it impossible to comply with the statute.' " 96 N.W.2d 597, 601.

As heretofore noted, the Iowa Court in Van Patten expressly held that the operation of an automatic stop sign at periods a train was not present did not excuse a motorist's failure to heed the sign when a train was approaching.

 The evidence in the present case conclusively establishes that the signal device was operative for a sufficient time prior to the collision to permit and require plaintiff's decedent to obey the command of § 321.341. His failure to do so constitutes negligence per se. Plaintiff has not met the burden resting upon her to produce evidence, direct or circumstantial, sufficient to excuse such negligence. Clearly decedent's negligence contributed directly to his injury and death and such negligence bars any right to recover damages. The court erred in overruling defendant's motion for a directed verdict at the close of the evidence.

What has heretofore been said is dispositive of this appeal. No necessity arises for determining whether the decedent was exercising due care under common law standards. We also pretermit discussion of errors urged with respect to rulings upon evidence and with respect to instructions.

Inasmuch as defendant did not file a timely Rule 50(b) motion for judgment n. o. v., the maximum relief that can be given by reason of the court's error in overruling its motion for a directed verdict is a new trial. Johnson v. New York, N. H. & H. R. R., 344 U.S.

48, 73 S.Ct. 125, 97 L.Ed. 77; Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849; Local 978, United Bro. of Carpenters & Joiners, etc. v. Markwell, 8 Cir., 305 F.2d 38, 48.

The judgment is reversed and this case is remanded to the trial court for a new trial.