Leonard W. Pinckney, appellant, v. Harley Watkinson and
Harley Lee Watkinson, appellees.

No. 50583.

(Reported in 116 N.W.2d 258)

JULY 24, 1962.

REHEARING DENIED SEPTEMBER 18, 1962.

John D. Randall and John D. Randall, Jr., both of Cedar Rapids, for appellant.

James W. Crawford and William R. Eads, both of Cedar Rapids, for appellees.

LARSON, J.—This action for damages followed a rear-end collision between plaintiff's Buick automobile, stopped to pick up two boys on old Highway 30 about three miles east of Cedar Rapids, Iowa, and a Studebaker sedan owned by one defendant and operated by his 16-year-old son, the other defendant. The jury returned a verdict for defendants. Plaintiff's motion for a new trial was overruled and he appealed. For convenience, we shall hereinafter refer to the son as defendant.

Appellees' motion to strike appellant's brief and argument for failure to comply with rule 344(4), R. C. P., and for resubmission thereof was ordered submitted with the case, and might well have been sustained. It is difficult to determine whether the alleged errors are as to the law or as to the sufficiency and competency of the evidence to justify certain court instruction. However, we have made an effort to determine the alleged errors as argued by the parties and, in order to expedite the appeal, overrule appellees' motion.

While we find little merit in the alleged errors, we do agree with appellant that the trial of a lawsuit is an attempt to arrive at a just conclusion of a controversy, and that it is the duty of the trial court to see that the jury is guided in the law so that the facts as determined by them may be properly applied. Appellees contend that was done here, and we agree.

Appellant, as we understand, contends that the trial court erred in giving three instructions to the jury which, although not erroneous themselves, were upon matters which had little if any factual support in the evidence, that they tended to mislead the jury and so overemphasized defendant's theory of the

case that they were prejudicial to him, that by admitting evidence obtained by one who worked with a patrolman while he was making an official investigation, prejudicial error arose which materially affected his rights, and that if any one of the alleged errors was not alone reversible, the aggregate furnished a compelling reason for granting a new trial in the interest of justice.

■ I. Timely objections had been made, and exceptions were taken to Instruction No. 3 upon unavoidable accident, to Instruction No. 12 on sudden emergency, and to Instruction No. 13 on an operator's duty to stop off the traveled portion of the highway, under the provisions of section 321.354, Code, 1958. While it may be conceded the submission of instructions upon matters which have no factual support in the evidence, or which clearly overemphasize one or the other theory of the case would be error, a careful examination of this record fails to sustain such a contention. The problems presented require a review of the evidence and the requirements of section 321.354 and section 321.271 of the Code, 1958.

We find the record would support a factual determination that plaintiff entered old Highway 30 some quarter of a mile or more east of the scene of this accident, that he proceeded west at about 50 or 55 miles per hour over a knoll of a hill, then into a shallow depression, but deep enough to create a blind spot in the roadway ahead, then over another knoll some 150 feet from a 20-foot driveway leading into the Willard Sales and Service Shop on the right side of the highway.

On this morning, as he topped the first knoll some three to five blocks east of this drive, he noticed a car parked along the roadside near the drive and some boys nearby. As he came over the nearest knoll he recognized the boys as neighbors, applied his brakes, and came to a stop near the center of the Willard Shop driveway. There is some dispute as to whether plaintiff stopped his car entirely off the blacktop pavement or stopped with some five feet of it still in the right travel lane. One witness thought it was two or two and one-half feet on the paving. However, we are satisfied, as was the trial court, that the evidence was sufficient to justify a finding by the jury that plaintiff stopped

in such a position as to substantially block the westbound or north lane of travel and did not yield all or at least 20 feet of the traveled portion to other vehicular traffic as required, when he came to a stop 40 seconds before the collision. It took him that much time to rearrange books and packages and unlock the right front door so the boys could get in the front seat with him.

There is evidence that about this time the defendant's automobile came over the knoll farthest east at a speed of about 65 miles per hour, that its operator saw plaintiff's automobile in the vicinity of that driveway for only a moment, then lost it from view until he came over the nearest knoll some 150 feet away No signal was visible and he did not know it was not moving. His speed had not been reduced and, when he realized for the first time that plaintiff's car was stationary and partially blocking his lane of travel, he said he "dodged out" to pass and then discovered a car approaching from the opposite direction about the same distance from the plaintiff's vehicle. That this was an emergency could not be doubted. Fearing he could not make the pass, young Watkinson pulled back into his own lane, applied his brakes and slid into plaintiff's automobile with such force it injured plaintiff and seriously damaged both vehicles. There was also some evidence a car approaching from the west could not be seen for a brief period by a westbound driver due to the blind spot created by the near knoll. Thus we have the question of whether the evidence was sufficient to justify the submission of a sudden emergency instruction.

This accident happened shortly after 8 a.m. on December 30, 1959. It was a clear day, and the blacktop pavement 18 feet 3 inches wide was clear and dry. There was no driver visibility obstruction in either automobile, and no evidence of faulty equipment. In defendant's car were two passengers. One lad sitting on the right of the driver was asleep, and the other seated next to the door was reading a magazine. Plaintiff was alone at the time of the collision. There were two other eyewitnesses, occupants of the eastbound car, who testified for defendant.

The accident was investigated by a state highway patrolman and by a commercial photographer who was called by the patrolman but was not associated with him officially. The morning was

cool and the photographer was present in the warm car when the patrolman talked with the boys whose pictures appear in plaintiff's Exhibit "C". He denied he paid any attention to the conversation and did not obtain the information used in posing the boys when he took the photograph Exhibit "C". This situation gave rise to plaintiff's contention here that the evidence obtained by the witness was confidential under section 321.271 of the Code.

II. In Instruction No. 5, to which no objection was made, the court properly told the jury that in order to recover, plaintiff must prove by a preponderance of the evidence that defendant Harley Lee Watkinson was negligent in one or more of the particulars charged in his petition, which included excessive speed, failure to keep a proper lookout, and failure to have his automobile under control, that said negligence was the proximate cause of plaintiff's damages, that plaintiff was free from contributory negligence, and that he sustained some damages.

Plaintiff contends that, due to defendant's admitted violation of the speed permitted in that zone, and to certain other evidence tending to show a failure to keep a proper lookout and control, negligence was established, which made both Instruction No. 3 and Instruction No. 12 inapplicable. Thus a most vital issue appears to be whether the evidence was such as to justify the jury in a finding that defendant's speed was not a proximate cause of the collision and that his lookout and control were proper under the circumstances.

III. Instruction No. 3 as given by the court stated: "The mere fact that an accident happened at the time and place charged in the pleadings does not establish nor does it raise a presumption that the defendant was negligent. Before the plaintiff can recover against defendants upon his petition, the negligence of the defendants must be proved by the evidence." This is a stock instruction and quite proper in such tort cases. No serious objection to it alone appears, but plaintiff contends that, when read with Instruction No. 12 on sudden emergency and No. 13 on prohibited stopping, it was misleading and overemphasized defendant's theory of the case. He contends defendant's admission that he was driving at about 65 miles per hour as he

approached the accident scene, and that a speed limit of 60 miles per hour was posted in that vicinity, made defendant negligent per se and that fact should have been included in the instruction. No such request was made, and we find nothing more in this instruction than the requirement that plaintiff must, among other things, prove defendant's negligence before recovery can be had. It does not attempt to say recovery can be had if negligence appears, regardless of the other facts or circumstances. Indeed, to do so would be error, for regardless of such negligence, recovery could not follow unless it was also shown to have a causal connection with this injury.

IV. Instruction No. 12 stated: "When a person driving a motor vehicle is confronted by a sudden emergency *not of his own making,* and is, therefore, required to act upon the impulse of the moment, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation. Accordingly, if you find that the defendant, Harley Lee Watkinson, was confronted by an emergency not of his own creation, and if he exercised such care as an ordinarily reasonable, prudent and cautious man would exercise when suddenly confronted by a like emergency, and placed in similar circumstances, he is not guilty of negligence *because of the result,* even though another course of conduct might have been more judicious or more safe or might have avoided the accident." (Emphasis supplied.) It also is a proper stock instruction and, unless inappropriate, would not be error.

Plaintiff concedes, as he must, that if the jury found he was stopped illegally upon the traveled portion of the highway, defendant was faced with an emergency when he came over the nearest knoll and found he could not pass to the left because of an approaching vehicle from the west. But he contends the emergency was of defendant's own creation due to his excessive speed and his failure to keep a proper lookout and to have his vehicle under control. Defendant contends the evidence shows that until he came over the nearest knoll he could not see plaintiff's position nor any vehicle approaching from the opposite direction, that only a glimpse of the highway below the nearest knoll was possible for a driver coming over the farthest knoll some three

blocks away, that due to the blind spot caused by the highway depression he could not discover the situation until he was within 150 to 200 feet of plaintiff's automobile, that his car was under control as evidenced by his maneuver to avoid hitting plaintiff's car, and that his excess speed of five miles per hour could have had no connection with the emergency created by plaintiff's illegal stop.

 ██ Although speed in excess of the posted limit may have been negligence, it cannot be said under this situation that a finding is required defendant was at fault. The nature and extent of an emergency is usually a fact question to be passed upon by the jury. Of course, one who claims excuse on the ground of sudden emergency not created by his own act has the burden to prove it, but we are satisfied the evidence was sufficient to justify the submission of that issue to the jury here. As bearing on this problem, see Luppes v. Harrison, 239 Iowa 880, 885, 32 N.W.2d 809, and citations; Cunningham v. Court, 248 Iowa 654, 663, 82 N.W.2d 292, and citations; Mathews v. Beyer, 254 Iowa 52, 116 N.W.2d 477.

The jury could find that plaintiff had put on his brakes and stopped before defendant even came over the farthest knoll some 900 feet away, and that due to the nature of the highway defendant had no adequate warning of the danger he approached until within 150 to 200 feet, much too late under these circumstances to stop or avoid the collision by safe maneuvering. The 18-foot and 3-inch paving would allow no room for two cars to pass if a third was parked on any portion thereof. Therefore, it seems the jury could find the excessive speed had nothing to do with the emergency and that had defendant been traveling within the posted limit the emergency still would have occurred. Since defendant would have only had some three seconds to act if he had been driving within the speed limit, it seems that the other five miles per hour would have little effect in the short distance involved. At least, we think the instruction as to sudden emergency under the circumstance was proper and we find no error in giving it here.

V. Instruction No. 13 stated:

152

"You are instructed that under the statute of Iowa it is unlawful for any person to stop, park or leave standing any vehicle upon any highway outside of a business or residential district, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of two hundred feet in each direction upon such highway; and that if plaintiff violated this section, he would be guilty of negligence.

"You are further instructed that if you find that the vehicle of the plaintiff was disabled while on the paved or improved or main traveled portion of the highway in such a manner and to such an extent that it was impossible to avoid stopping and temporarily leaving such disabled vehicle in such position, then said statute shall not apply and plaintiff would not be guilty of negligence."

Section 321.354, Code of 1962,. provides as follows: "Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of two hundred feet in each direction upon such highway; provided, however, school busses may stop on highway for receiving and discharging pupils and all other vehicles shall stop for school busses which are stopped to receive or discharge pupils * * *."

It is obvious the given instruction is correct for it is substantially in the words of the statute. While plaintiff contends his momentary stop to pick up the boys was not such a stop as prohibited by this section, even if it be determined he was

stopped on the main traveled part, he maintains that the statute and Instruction No. 13 could not be complied with, for the paving itself was only about 18 feet wide. The arguments have no merit. The width requirement of an unobstructed width of at least twenty feet refers to the main traveled portion of a highway over twenty feet in width, and leaves no part of such traveled portion available for stopping if it is less than twenty feet wide.

All voluntary stopping of a vehicle which amounts to parking or leaving a vehicle standing, attended or otherwise, with the exceptions stated therein, is prohibited by the statute. It may be true our pronouncement as to the requirement of "stopping" under this statute gives the impression all such momentary stops are excusable, but such was not our intention and such is not the law. Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 1007, 1008, 82 N.W.2d 82; 43 Iowa Law Review 401.

In the Wemer case we did say that the statutory prohibition did not contemplate and did not intend to include a "stop" upon the highway where it is hazardous to proceed, or where the stop is made in response to a traffic command, or where the stop is made in the exercise of due care under the circumstances. See article in 43 Iowa Law Review 401–404, and citations.

There was no evidence here that plaintiff's vehicle was stopped due to disability, or in response to the orders of a traffic officer, or a signal from a school bus operator, or for any other reason which would require a reasonably prudent person to stop in the face of a hazardous situation, or that it was made in the exercise of due care or caution. On the other hand, there was evidence that plaintiff voluntarily stopped on the traveled portion of the highway, and that less than 20 feet of the traveled portion was left for free passage of other vehicles. There was some evidence that his stop was more than momentary (40 seconds) and the evidence was undisputed that there was ample room on the shoulder or in the driveway so that plaintiff could have pulled clear of the paving.

Indeed, the evidence here might well have supported a holding that plaintiff was contributorily negligent as a matter of law, and certainly supports a finding that plaintiff had not established

any legal justification or excuse for his stop at that time and place. Wachter v. McCuen, 250 Iowa 820, 827, 96 N.W.2d 597. There is little if any testimony that his stop was entirely off the highway, and we understand no serious contention is made that he was less than two feet on the traveled portion at the time of the collision. Physical facts and exhibits disclose no less. We are satisfied there was no error in giving Instruction No. 13.

VI. Appellant's next contention concerns the testimony of Mr. L. J. Burianek, a commercial photographer whose business for the past 22 years largely consisted of taking photographs at scenes of automobile accidents. He was not connected with the patrol although these officers often notify him when they are called to investigate an accident. He was so notified in this instance and arrived about one-half hour after the collision. As was his usual practice, he made his separate investigation and took several photographs, one of which was Exhibit "C" introduced into evidence by plaintiff. It showed the two boys standing beside the paving next to plaintiff's automobile where it had come to rest after the accident.

As we understand plaintiff's position now, he claims this photograph was posed by Burianek after he had obtained information which was confidential under the provisions of section 321.271 of the Code, and for that reason a new trial should have been granted.

Subsequent to a voir dire examination to determine where and how this witness obtained his information, the plaintiff objected to "information which was learned in connection with the investigation of the Highway Patrol, * * * [the same being] confidential as to those who may have been in a position where they hear what investigation was being made." It is true we have held this section does more than create a personal privilege, for it prohibits the use in evidence of information required of one for the purpose of a report to the State, and that the information given an officer as therein required for the purpose of making his written report cannot be used to the prejudice of the informant through the testimony of the officer, an eavesdropper, bystander, or anyone else. Section 321.271, Code, 1958;

Sprague v. Brodus, 245 Iowa 90, 60 N.W.2d 850; Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 202, 61 N.W.2d 696.

The witness admitted he was present in the patrolman's car when the boys were questioned, and that he also asked some general questions. He also stated he had first talked to the boys outside the presence of the officer, and because of the cold they later went to the warm patrol car where the officer wrote down the information they gave him. The witness stated he paid no attention to that interview with the officer as he was busy writing up his own notes. Later, after they had warmed up, he and the boys walked down to the plaintiff's car and he asked them to stand as they had been standing at the time of the collision. That picture is Exhibit "C".

 ██ It appears from the record that Exhibit "C" was introduced by plaintiff and was used by him in presenting his case. While it is true such reports to an officer are privileged communications which may not be waived (Sprague v. Brodus, 245 Iowa 90, 93, 60 N.W.2d 850, and Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 202, 61 N.W.2d 696), we are satisfied the information this witness used to pose the picture was independently obtained by him prior to the official report and would not be barred. Furthermore, the evidence now complained of was cumulative, and certainly not sufficiently prejudicial to call for a reversal. See Mathews v. Beyer, supra, 254 Iowa 52, 116 N.W.2d 477, and citations of authority. No objection to the exhibit itself was ever made, and at no time did the court permit any testimony as to what the boys had said to the officer or to this witness in the presence of the officer. We find no error in the court's refusal to grant a new trial on this alleged error.

In Goodman v. Gonse, 247 Iowa 1091, 1104, 76 N.W.2d 873, we said the statutory exclusion should not be extended to things one observes, nor to statements made by those involved, made either in or out of the presence of an officer which were not intended as a report or as information given for such a report.

Here the witness said he made his own independent investigation, talked with the boys before and after the interview with the officer, and while such close cooperation between an assisting photographer and the investigating officer might well make ac-

quired information privileged, we are satisfied under this record no privileged information was revealed by Exhibit "C" or by the testimony of the photographer, which would justify a reversal.

Evidentiary value of this testimony, if any, would of course relate to the distance the boys were from the pavement edge when the accident occurred, and by inference tend to establish the fact that plaintiff's automobile was on the traveled portion of the highway when struck. Considerable other evidence appears which establishes that fact, and we find no substantial evidence to contradict it. The contention, therefore, seems highly technical and, under plaintiff's admonition to seek justice, we should not hold its admission was prejudicial error.

VII. Having carefully examined the record and considered the various complaints, we are satisfied there was no error in the court's ruling on objections and exceptions, that the instructions complained of, read individually or collectively, did not disclose prejudicial error, and that the record taken as a whole disclosed no basis for granting a new trial herein. The judgment for defendant must, therefore, be affirmed.—Affirmed.

GARFIELD, C. J., and OLIVER, HAYS, PETERSON, SNELL, and MOORE, JJ., concur.

THOMPSON and THORNTON, JJ., concur specially.

THOMPSON, J. (specially concurring)—I concur in the result of the foregoing opinion, and generally with the opinion itself. However, I think it necessary to make the following comments.

I. The plaintiff cites and relies upon Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 1007, 1008, 82 N.W.2d 82, 84. The prevailing opinion there held flatly that "Clearly the word 'stop' used in the statute is intended as synonymous with 'park' or 'leave standing.' " Also it held that a momentary stop upon the paved portion of the highway for the purpose of yielding the right of way to an oncoming vehicle at a narrow underpass was not a violation of section 321.354 as a matter of law, and required no instruction from the court as to the meaning of the statute and its application to the facts of that particular case.

In view of the fact that Jesse v. Wemer & Wemer Company,

supra, is stressed by the plaintiff in argument and is cited in the opinion, I think it should be pointed out that the Jesse case is not in fact authority for the points stated in the foregoing paragraph of this concurrence. While the case was affirmed, only four justices concurred in the opinion. Four dissented, and Judge Smith concurred only in the result. The effect is therefore to leave the questions undecided by a majority of this court.

THORNTON, J., joins in this special concurrence.