Ned COOK, Administrator of the Estate of Patsy Joanne Cook, Deceased, Appellee,

v.

Donald Eugene CLARK, Defendant,

and

Roger M. Barrett, Appellant.

No. 54467.

Supreme Court of Iowa.

May 5, 1971.

Barnes & Schlegel, Ottumwa, and T. G. Garfield, Ames, for appellant, Roger M. Barrett.

James W. McGrath, Keosauqua, and Donald W. Harris, Bloomfield, for appellee.

LeGRAND, Justice.

On November 4, 1967, Patsy Joanne Cook sustained fatal injuries while riding in a car driven by her husband, Ned Cook.

He brought this action as administrator of her estate, and following a jury trial, obtained a verdict in the amount of $30,000 against both Donald Eugene Clark and Roger M. Barrett, whose concurrent negligence was alleged to have caused the accident. Donald Eugene Clark admitted liability at the trial. Only Roger M. Barrett appeals. We refer to him as the defendant.

Defendant was driving south on Highway 1 near Keosauqua. He testified he intended to turn left at the Bentonsport Road, which joins Highway 1 by means of a T-intersection. As he approached this intersection he observed the Cook car approaching from the south. Determining he could not safely turn left in front of it, defendant waited for the car to clear. His driving conduct at this point is a matter of considerable dispute and confusion, which will be discussed later. For the time being, it is enough to say that the Barrett car, while stopped, was struck from the rear by the Clark vehicle. After this impact, Clark's car crossed the center line directly into the path of the Cook car. A head-on collision resulted. Mrs. Cook sustained injuries from which she died several hours later. As already mentioned, suit for her wrongful death terminated in jury verdicts against both Clark and Barrett. We affirm the trial court.

Defendant lists 13 errors which, he says, either separately or cumulatively entitle him to a reversal. Except for one based on his motion for a directed verdict, all the assigned errors deal with the specifications of negligence upon which the case was submitted to the jury.

The issues raised by this appeal are: (1) error in permitting the jury to pass on defendant's alleged negligence in stopping on the paved portion of the highway (section 321.354, The Code, 1966); (2) error in submitting the charge that defendant stopped in such a manner as to leave less than a clear and unobstructed width of at least 20 feet of the highway opposite his car (section 321.354, The Code, 1966); (3) error in submitting the specification charging defendant with making an approach for a left turn in a manner prohibited by section 321.311, The Code, 1966; (4) error in submitting both (1) and (3) above (even assuming one or the other was proper) because they are inconsistent, observance of one making impossible obedience to the other; and (5) error in refusing to direct a verdict for defendant.

It is necessary first to detail defendant's testimony at some length. His version of the accident can only be described as incredible. In large measure it is responsible for most of the objections he now urges. Parenthetically, we mention Barrett was not called as a witness in his own behalf. His story came in by way of deposition introduced by plaintiff and by oral testimony when he was called as plaintiff's witness.

In substance defendant says he intended to make a left turn at the Bentonsport Road but thought he should wait until the Cook car had passed the intersection before doing so. He pulled to his right as far as he could without driving off the paved portion of the highway. He did not go onto the shoulder because the road was newly constructed, had just been opened and the shoulders were not yet finished. He says he came to a complete stop 35 to 60 feet north of the intersection. At one time he said he was stopped for perhaps *seven minutes*; and at another place he put this interval at *ten minutes*. He also says he was struck by the Clark car about *three-and-a-half or four minutes* after he came to a complete stop. Defendant departed somewhat from these statements by testifying at trial that after visiting the scene of the accident with Mr. Barnes, his attorney, and noting the distances involved, he concluded his stop was perhaps 10 to 15 *seconds*, although he freely admitted having made the previous estimates and reiterated that at the time he considered them correct. He said, too, he was "positive" his flasher signal was on to indicate a left turn, but added it was "probable" he had

inadvertently turned it off while stopped on the highway. He testified he was stopped "dead still" and that he always comes to a complete stop before making a turn, either to the right or to the left. His practice, he said, is to come to a stop, put his car into parking gear, and then wait until a turn can be made in safety. This is the procedure he followed on the occasion in question. He also insisted he was unaware of the second collision involving the Clark and Cook vehicles until returning to the scene after he had gone back to Keosauqua at Clark's request to get help—despite the fact the Clark-Cook collision must have happened almost directly in front of him. He repeated this testimony on at least several occasions, both in his deposition and during his testimony at trial. Incidentally defendant received no injuries to account for his failure to observe this second crash. We mention defendant's professed ignorance of the fatal collision, not because it is important to the issues raised, but only to emphasize the general unreliability of his testimony.

This was the record, then, when the case went to the jury. We agree with the trial court's observation that the testimony was confusing and contradictory, making proper instruction of the jury more than ordinarily difficult.

■ I. Perhaps this would be an opportune time to discuss defendant's claim of error in submitting inconsistent specifications of negligence—one requiring him to stop his car off the traveled portion of the road if practical, and the other to drive in the portion of the right half of the road nearest the center line in making his left-turn approach.

This involves two statutory driving standards. The pertinent portion of section 321.354 provides:

"Upon any highway outside of a business or residence district no person shall stop * * * any vehicle * * * upon the paved or improved or main traveled part of the highway when it is practical to stop * * * such vehicle off such part of said highway. * * *"

Section 321.311 requires one intending to make a left turn at an intersection to do so by making his approach in "that portion of the right half of the roadway nearest the center line thereof."

Defendant urges it was error to instruct on these two statutory duties since it was impossible to comply with both of them at the same time. Under ordinary circumstances there would be merit in this argument; but under ordinary circumstances the problem which faced the trial court here would not arise. The difficulty lies in defendant's testimony as to the unorthodox manner in which he makes left turns. If he drove as far to the *right* as possible in approaching for a left turn, as he said he did, he violated section 321.311; if he brought his car to a stop on the highway for a substantial interval when it was practical to stop off the highway—taking the version which fixed the time at from seven to ten minutes—the jury could find he violated section 321.354. Under this extraordinary evidence, the court was justified in submitting both specifications to the jury.

II. Defendant complains that the jury should not have been permitted to pass upon the specification charging he was negligent in stopping on the paved or traveled portion of the highway because the evidence shows without dispute it was not practical to pull off onto the shoulder.

No claim is made that 321.354 does not apply to a stop made under the circumstances here, only that the evidence shows it was not practical to stop off the pavement. On the subject of stopping on the highway generally see Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 82 N.W.2d 82; Pinckney v. Watkinson, 254 Iowa 144, 116 N.W.2d 258; Mazur v. Grantham, 255 Iowa 1292, 125 N.W.2d 807; 43 Iowa Law Review 401–404. See also Leman v. Standard Oil Co., 238 Minn. 379, 57 N.W. 2d 814, 819.

We have already given defendant's testimony as to the condition of the shoulders, and both Clark and the investigating patrolman testified in similar vein. The patrolman added the observation that the shoulders were not drivable. Defendant asserts there was no evidence from which the jury could find a violation of this provision of section 321.354.

■ In making this argument he disregards several photographs which were introduced without objection. These pictures showed the condition of the shoulders at the scene of the accident, and at least one included tire tracks from which the jury could conclude that, despite testimony to the contrary, it was practical to have pulled off onto the shoulder. This pictorial evidence is entitled to consideration when we determine whether the issue should have been submitted. Stotelmeyer v. C. M. & St. P. Ry. Co., 148 Iowa 278, 281, 127 N.W. 205, 206; Mazur v. Grantham, 255 Iowa 1292, 1296, 125 N.W.2d 807, 810; Capener v. Duin, Iowa, 1969, 173 N.W.2d 80, 87.

This from 29 Am.Jur.2d, Evidence, section 785, page 856, states the general rule:

"It is well established that photographs of persons, things and places when duly verified and shown by extrinsic evidence to be faithful representations of the subjects as of the time in question are admissible in evidence, both in civil and criminal cases, as aids to the jury in arriving at an understanding of the evidence, the situation or condition of objects or premises, the circumstances of an accident, or the conditions or identity of a person when any such matter is relevant to the issues being litigated. Photographs, when properly authenticated, are, as a general rule, held to be admissible under two distinct rules—(1) to illustrate the testimony of a witness, and (2) as 'mute', 'silent', or 'dumb' independent photographic witnesses."

■ As early as State v. Matheson, 130 Iowa 440, 443, 103 N.W. 137, 139, we recognized that photographs are properly considered as evidence of the matters they portray upon proper identification. See also State v. Thompson, 239 Iowa 907, 910–911, 33 N.W.2d 13, 14–15; Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 1005, 1014, 82 N.W.2d 82, 88; and 3 Jones on Evidence, sections 625, 626, pages 1189, et seq.

■ We are not concerned here with the question of identification or accuracy of representation since the pictures were admitted without objection under an agreement that they showed the conditions existing at the time of the accident, although defendant now attempts—too late—to disclaim this concession at trial. When all the evidence, including the photographs, is considered, the jury could find that it was practical for defendant to have stopped his car off the highway in compliance with section 321.354.

Further support for submission of the issue may be found in rule 344(f), 17. Even if defendant's claim that the evidence is undisputed be accepted, reasonable minds could, we believe, draw different inferences as to whether it was practical to stop off the pavement. A jury question was therefore engendered.

We hold there was enough evidence to submit the alleged violation of this statutory duty to the jury.

■ III. On the question of whether defendant left—or could have left—20 feet of unobstructed highway opposite his stopped car for the passage of other traffic, as required by section 321.354, we get down to close measurements. Defendant testified his car was five and three-quarters feet wide and that the road was 26 or 27 feet wide. He also testified he got as close to the west edge of the road as possible. If he were exactly on the west edge of the road, he would have complied with this statutory requirement. However, Clark testified the Barrett car was four feet from the center line when he saw it

before the accident. Under this testimony, there would have been less than 20 feet of clear and unobstructed width opposite his car for the free passage of other traffic, even taking his maximum estimate of the width of the highway.

Defendant now argues his measurements were inaccurate and says the highway patrolman, who placed the width of the road at 24 feet two inches, was correct. From this Barrett concludes he had a legal excuse for not observing the statute because the width of the road would not permit it. He now offers to stipulate his measurements were wrong, and he wants to adopt the patrolman's.

We have held this would not constitute a legal excuse. Pinckney v. Watkinson, 254 Iowa 144, 153, 116 N.W.2d 258, 263. Furthermore we must determine if the trial court was correct in submitting this issue under the record as it was when the case went to the jury. At trial there was no such concession on defendant's part, and the trial court was obliged to assume the jury might believe his measurements instead of the patrolman's, in which event they could find he failed to comply with the statute, even though he could have done so.

We believe this matter was properly submitted to the jury.

■ IV. Defendant next claims he did not violate section 321.311 dealing with the manner in which an approach for a left turn must be made because when stopped he was some 35 to 60 feet north of the intersection and could still have complied with the statute if he had not been struck by Clark. However, that theory does not square with the evidence. As we understand the testimony, he said he brought his car to a stop awaiting only the passage of the Cook car to make his left turn from that point. The record is clear that his approach for the left turn had then been

completed and that the jury could find it had been made contrary to the statute.

Here again we hold the trial court was correct in submitting this issue to the jury.

■ V. The last assignment of error deals with defendant's motion for a directed verdict on the ground Clark's negligence was an intervening cause and that his own negligence, if there was any, could not have been the proximate cause of Mrs. Cook's death.

We find no merit in this argument. In Henneman v. McCalla, 260 Iowa 60, 66–68, 148 N.W.2d 447, 450–452, we discussed a similar problem. That discussion and the authority cited decide this argument against the defendant. See also 2 Harper and James, The Law of Torts, section 20.-03, page 1121.

■■ VI. We add one final word on Barrett's belated claim he was entitled to an instruction on legal excuse because it was impossible to comply with the statute requiring a clear and unobstructed width of at least 20 feet of the traveled portion of the highway opposite his car. He correctly says such an instruction should be given, even though the defense is not pled, if the evidence warrants it. Schmitt v. Jenkins Truck Lines, Inc., Iowa, 1969, 170 N.W.2d 632, 643. We have already indicated in Division III our doubt that Barrett was entitled to such an instruction here; and we need not decide the issue. Where, as here, no such instruction was requested and no objection was made to a failure to instruct, the matter may not be raised on appeal for the first time. Rule 196, R.C.P.; Reed v. Willison, 245 Iowa 1066, 1071, 65 N.W.2d 440, 442; Nichols v. Kirchner, 241 Iowa 99, 100, 105, 40 N.W. 2d 13, 17; Coppola v. Sinclair Refining Co., 256 Iowa 1340, 1342, 131 N.W.2d 270, 272; Barnard v. Cedar Rapids City Cab Co., 257 Iowa 734, 752, 133 N.W.2d 884, 896.

We find no reversible error and the judgment is accordingly affirmed.

Affirmed.

All Justices concur except REYNOLDSON, J., who takes no part.