**AMCO INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**Randy A. STAMMER and Rhonda Stammer, Defendants-Appellants.**

No. 86–19.

Court of Appeals of Iowa.

June 24, 1987.

Mark S. Soldat, Algona, for defendants-appellants.

Kirke C. Quinn of Doran, Courter, Quinn & Doran, Boone, for plaintiff-appellee.

Heard by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SNELL, Presiding Judge.

The plaintiff in this declaratory judgment action, AMCO Insurance Company, is the insurer on a casualty policy covering the home of defendants, Randy and Rhonda

Stammer. The policy extends to fire loss but does "not provide coverage for any insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." Both Randy and Rhonda qualify as an "insured" within the policy. On June 12, 1983, fire extensively damaged the Stammers' home and its contents. All parties agree that the fire was the result of arson. On October 25, 1983, AMCO initiated this action for declaratory relief alleging that both Randy and Rhonda were responsible, either directly or indirectly, for the arson and that both Randy and Rhonda had falsified statements and acted fraudulently in connection with their claim against AMCO. The declaratory judgment petition requested the district court to declare that AMCO had no remaining duties under the insurance contract to the Stammers and that the Stammers had no rights enforceable against AMCO. On November 21, 1983, the Stammers filed their answer.

Subsequently, the Stammers filed both a motion for leave to amend their answer and a motion for partial summary judgment. The district court granted the former motion, and the Stammers amended their answer so as to add a breach of contract claim on behalf of Randy and Rhonda and three tort claims on behalf of Rhonda alone. The motion for summary judgment alleged that AMCO had a duty under the policy to pay Rhonda for any property losses, expenses, or costs she incurred because of the fire. This motion was denied on September 10, 1984. On November 26, 1984, AMCO filed a motion for summary judgment with respect to the three tort counterclaims raised in the Stammers' answer. This motion was granted on January 28, 1985.

Trial to a jury commenced on September 27, 1985. A verdict in favor of AMCO was returned on October 3. Following an unsuccessful motion for new trial, the Stammers filed their notice of appeal. In this appeal, the Stammers challenge the summary judgment rulings made by the district court and allege several errors made during the course of trial. Our review is limited to the correction of errors at law. Iowa R.App.P. 4.

## I.

The Stammers contend the district court erred in denying their summary judgment motion on the question of AMCO's contractual duty to Rhonda. In her affidavit given in support of the summary judgment motion, Rhonda denied all allegations made against her in AMCO's petition. The Stammers' argument on this point is essentially limited to an attack on the sufficiency of an affidavit offered in support of AMCO's resistance to the summary judgment motion. We think this argument places the cart far ahead of the horse.

■ The purpose of a summary judgment is to avoid a trial where no genuine issue of material fact exists. *Neoco, Inc. v. Christenson*, 312 N.W.2d 559, 560 (Iowa 1981). In reviewing the grant of summary judgment under Iowa Rule of Civil Procedure 237, the question is whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Suss v. Schammel*, 375 N.W.2d 252, 254 (Iowa 1985); *Brown v. Monticello State Bank of Monticello*, 360 N.W.2d 81, 83–84 (Iowa 1984). The resisting party must set forth specific facts showing there is a genuine issue for trial. *Iowa Civil Rights Comm'n v. Massey-Ferguson, Inc.*, 207 N.W.2d 5, 8 (Iowa 1973); Iowa R.Civ.P. 237(e). The resisting party may not rely solely on legal conclusions to show there is a genuine issue of material fact justifying denial of summary judgment. *Byker v. Rice*, 360 N.W.2d 572, 575 (Iowa App.1984). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984). We examine the record in a light most favorable to the party opposing the motion for summary judgment to determine if movant met his or her burden. *Matherly v. Hanson*, 359 N.W.2d 450, 453 (Iowa 1984).

A motion for summary judgment is not supported as required by rule 237 unless the movant meets his or her burden to show there is no genuine fact issue. *Daboll v. Hoden,* 222 N.W.2d 727, 731 (Iowa 1974). Unless the movant's showing is sufficient, there is no burden on the opposing party to file affidavits showing that he or she has a cause of action or even to file counteraffidavits at all. 73 Am. Jur.2d, *Summary Judgment* § 15 at 735–37 (1974). We think Rhonda's blanket denial of the allegations made by AMCO falls short of a successful showing that no factual issue remains for trial. Her burden as movant is to demonstrate affirmatively that no factual issue exists, not that her version of the disputed factual issues is, in fact, the correct one. To allow Rhonda to satisfy her summary judgment burden by proffering a simple denial of AMCO's allegations would place the district court in the position of summary judgment fact-finder. That is a position the district court is prohibited from assuming. *Daboll,* 222 N.W.2d at 731. Moreover, a summary judgment disposition should be granted only on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. *Id.* at 735; *see also Cowman v. Hornaday,* 329 N.W.2d 422, 424 (Iowa 1983). In the present case, a jury would be free to disbelieve Rhonda's denials of culpability even were they uncontradicted. *Daboll,* 222 N.W.2d at 736. Even the most unsophisticated appreciation of this case would disclose that her denials are, in fact, anything but uncontradicted. The purpose of a summary judgment is to avoid useless trials. *Id.* at 731. As Rhonda's summary judgment motion did not establish this to be such a trial, the district court did not err in denying her motion.

## II.

The appellants next maintain the district court erred in eliminating, by way of summary judgment, the three tort counterclaims made by Rhonda in appellants' amended answer. Those counterclaims alleged causes of action based upon three theories: (1) a first-party bad faith tort; (2) ex delicto tort; and (3) abuse of process. These claims by Rhonda are all grounded in Rhonda's contention that she is an innocent co-insured, that no credible evidence to the contrary exists, and that AMCO's failure to pay benefits to her constitutes a tort.

### A.

The courts of this state have never recognized the first-party bad faith tort alleged by Rhonda here. *E.g., Hoekstra v. Farm Bureau Mut. Ins. Co.,* 382 N.W.2d 100, 111 (Iowa 1986). Neither, however, have our courts definitively stated that such a cause of action will never, under any set of circumstances, be found to exist. *See, e.g., Pirkl v. Northwestern Mut. Ins. Bureau,* 348 N.W.2d 633, 634–36 (Iowa 1984). Rather, "our law has been shaped on the basis of identifying the type of situation which does not permit recovery" under that theory. *Id.* at 635. Recovery under this theory is not permitted in situations where the claim which the insurer has failed to pay is as a matter of law "fairly debatable." *Id.* As our supreme court stated in *M–Z Enters., Inc. v. Hawkeye-Security Ins. Co.,* 318 N.W.2d 408, 415 (Iowa 1982), "[w]hen a claim is 'fairly debatable' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." Our cases acknowledge that those jurisdictions which have recognized such a cause of action require an insured to demonstrate the absence of a reasonable basis for denying policy benefits and the insurer's knowledge or reckless disregard of the lack of reasonable basis for denying the claim. *Hoekstra,* 382 N.W.2d at 111; *M–Z Enterprises,* 318 N.W.2d at 414–15.

Whatever the precise parameters of a first-party bad faith cause of action, assuming our supreme court chooses eventually to recognize such a tort, situations presenting a "fairly debatable" claim lie unequivocally outside the theory's ambit. *E.g., Pirkl,* 348 N.W.2d at 635. As applied to the summary judgment context, this places the burden on AMCO to demonstrate "with or without supporting affidavits," Iowa R.Civ.P. 237(b), that Rhonda's

claim is "fairly debatable." *Pirkl*, 348 N.W.2d at 635. If they do so, they are entitled, as a matter of law, to debate it. We think AMCO has done so. Although much of the evidence against her is circumstantial, the cases recognize that in arson situations "this is ordinarily the only evidence available." *Koontz v. Farmers Mut. Ins. Ass'n*, 235 Iowa 87, 94, 16 N.W.2d 20, 24 (1944) ("One could scarcely be expected to set fire to his property in the presence of others...."); *Natalini v. Northwestern Fire and Marine Ins. Co.*, 219 Iowa 806, 812, 259 N.W. 577, 579–80 (1935). In addition, it appears that the issue of whether an innocent co-insured, even assuming that to be the case, may recover under a policy in situations such as this has not yet been decided in this state. AMCO was entitled to debate this legal issue as well as the factual issue of Rhonda's culpability. *Compare Short v. Oklahoma Farmers Union Ins. Co.*, 619 P.2d 588 (Okl.1980) (recovery denied innocent co-insured) *with Steigler v. Insurance Co. of North America*, 384 A.2d 398 (Del.1978) (recovery allowed innocent co-insured). We think that, as a matter of law, Rhonda's claim is fairly debatable and that AMCO is entitled to debate it. Consequently, the district court was correct in granting AMCO summary judgment on Rhonda's first-party bad faith tort claim.

### B.

The district court also granted AMCO summary judgment on Rhonda's ex-delicto tort claim. In this claim, Rhonda alleged that AMCO had wrongfully neglected to perform its good faith duty to make a reasonable and timely adjustment settlement and payment to her. Rhonda contends that the summary judgment determination was error.

When a contract imposes a duty upon a person, the neglect of such a duty is a tort, and an action ex delicto will lie. *Porter v. Iowa Power and Light Co.*, 217 N.W.2d 221, 228 (Iowa 1974). Such an action may lie with respect to the "common-law duty to perform the thing agreed to be done with ... faithfulness,...." 1 Am.Jur.2d *Actions* § 9 at 550 (1962). We think, however, that to allow such a claim in cases as the present one would amount to a recognition of the first-party bad faith cause of action which our supreme court has repeatedly declined to recognize in similar cases. In *Long v. McAllister*, 319 N.W.2d 256 (Iowa 1982), our supreme court discussed the theoretical underpinnings of the first-person bad faith claim. The court stated that such a claim is grounded in the "duty of good faith and fair dealing [which] arises from the insurance contract and runs from the insurer to the insured." *Id.* at 261. The issue in such a case "is whether the insurer was guilty of bad faith in failing to pay the insured's own claim." *Id.* The *Long* court then noted that such a claim has not been recognized in Iowa. *Id.* In pleading her ex delicto cause of action, Rhonda alleged that AMCO had "wrongfully neglected to perform [its] duty [of good faith]." We find no appreciable distinction between this allegation and an allegation that AMCO "was guilty of bad faith in failing to pay [Rhonda's] claim." *See Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30, 34 (Iowa 1982) ("bad faith" refers simply to "absence of good faith"). The latter allegation, in cases such as this, does not state a cause of action. *Id.* Neither, we think, should the former. The district court's award of summary judgment was appropriate.

### C.

A similar analysis disposes of appellants' claim that the district court erred in granting AMCO summary judgment on the abuse of process claim. Rhonda supports this claim with allegations that AMCO filed this declaratory judgment action

for the improper purposes of hoping that ... evidence [against Rhonda] would somehow develop during the pendency of this action, or that somehow it could imput whatever evidence it had against Randy Stammer to Rhonda Stammer, or that it could make interest on the insurance not paid, or any combination of the foregoing purposes.

The general principle underlying an abuse of process claim is noted in section 682 of the Restatement (Second) of Torts. It states:

One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

In *Schmidt v. Wilkinson*, 340 N.W.2d 282, 284 (Iowa 1983), our supreme court adopted comment b to section 682, which explains that

there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.... For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed or intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.

In addition, *Schmidt* approved the following commentary from the Restatement (Second) of Torts section 682 appendix (1981), which attempts to crystallize the essence of abuse of process:

Some act or threat directed to an immediate objective not legitimate in the use of the process is required, and the defendant is not liable if he has done no more than carry the process to its authorized conclusion, even with bad intention.

*Schmidt*, 340 N.W.2d at 284.

■ In the present case there is no question that AMCO was within its rights in bringing this action in order to have its duties under the policy determined. Iowa Rule of Civil Procedure 262 provides that "[a]ny person interested in a contract, oral or written, ... may have determined any question of the construction or validity thereof or arising thereunder, and obtain a declaration of rights, status or legal relations thereunder." Insurers commonly employ declaratory judgment proceedings in order to determine their rights and duties under the relevant policy. *See e.g., IMT Ins. Co. v. Roberts*, 401 N.W.2d 228 (Iowa App.1986). This is precisely what AMCO has done in the suit at bar. The motives for AMCO's action alleged by Rhonda, even if true, would be incidental to its primary and proper motivation. We think the district court correctly determined that, as a matter of law, no action could be maintained against AMCO for abuse of process.

## III.

The appellants contend that the district court erred in refusing to allow them to amend their answer to conform with the proof following trial. Such an amendment would have stated a first-party bad faith tort claim on behalf of Randy and an ex delicto tort claim on behalf of both defendants.

■ The amendment of pleadings is provided for in Iowa Rule of Civil Procedure 88. The allowance or disallowance of amendments to the pleadings to conform to the proof at the close of all evidence is a matter for the exercise of the trial court's discretion. *W & W Livestock Enters., Inc. v. Dennler*, 179 N.W.2d 484, 488 (Iowa 1970). The trial court's discretion in allowing or refusing to allow amendments is broad and will not be interfered with on appeal unless the discretion is abused. *Id.; Kellar v. Peoples Natural Gas Co., a Div. of Inter-North, Inc.*, 352 N.W.2d 688, 692 (Iowa App.1984). The present case convinces us that the district court was acting within an allowable range of its discretion in denying the appellants' motions. The district court had earlier determined, in its ruling on AMCO's summary judgment motion, that as a matter of law the first-party bad faith and ex delicto tort claims were not available to Rhonda under the present factual situation. We have today agreed with that determination. Although the appellants' motion to amend changed the parties asserting these causes of action, these changes do not, under this record, make the claims any more meritorious or avail-

able. We find no error in the district court's denial of the motion.

## IV.

The appellants maintain the district court erred in instructing the jury. This error, they contend, resulted from the district court's arbitrary failure to instruct on their theory that AMCO had breached its duty to settle or adjust. In addition, the appellants argue the instructions unjustifiably focused on AMCO's theory of the case to the exclusion of their own.

The parties to a lawsuit have a right to have a legal theory submitted the jury so long as the theory is supported by both the pleadings and substantial evidence. *Hoekstra v. Farm Bureau Mut. Ins. Co.*, 382 N.W.2d 100, 107 (Iowa 1986); *Carter v. Wiese Corp.*, 360 N.W.2d 122, 132 (Iowa App.1984). A court may not unduly emphasize, by repetition or otherwise, issues, theories, defenses, particular evidence, specific or assumed facts, or burden of proof. *Dickman v. Truck Transp.*, 224 N.W.2d 459, 464 (Iowa 1974). The submission of instructions which clearly overemphasize one or other theory of the case is error. *Pinckney v. Watkinson*, 254 Iowa 144, 147, 116 N.W.2d 258, 260 (1962). A court is free, however, to draft jury instructions in its own language as long as the instructions fairly cover the issues. *Hoekstra*, 382 N.W.2d at 110. On appeal, we review the instructions as read and construed together, not piecemeal or in artificial isolation. *Clinton Land Co. v. M/S Associates, Inc.*, 340 N.W.2d 232, 234 (Iowa 1983).

Our application of these principles to this case persuades us that the appellants' contention here is without merit. The statement of the case which was given with the instructions clearly presents the appellants' theory "that the insurance company breached the terms of its policy, by failing to pay for the covered losses sustained by the Defendants,...." The remainder of the instructions was drafted appropriately. Neither do we think the instructions, when considered as a whole, unduly emphasize

AMCO's theory of the case. We reject the appellants' suggestion to the contrary.

## V.

The appellants contend the district court erred by permitting improper impeachment of Randy. During trial, the following colloquy transpired during AMCO's direct examination of Randy:

Q. Do you agree that this house was burned intentionally? A. Was it an arson, you mean?

Q. Yes. A. Yeah.

Q. How do you suggest to this jury how the arsonist got in? A. I do not know.

Following appropriate objections, AMCO's counsel was allowed to proceed with the following attempt at impeachment:

Q. I'd like to have you turn your attention to the statement under oath before you that was taken on August 25, 1983, and direct your attention specifically to line 25 at page 73. Do you find that sir? A. Yes, I do.

Q. Do you find this question appearing there: "Do you have any idea how they would have gotten in there if that would be the case?" And what was your answer at that time? * * * What was your answer? A. "Key would work pretty good."

Q. The key? A. Yeah.

Q. And that was your answer at that time? A. Yes, it was.

The appellants contend this impeachment was improper because no material inconsistency is present. In analyzing the appellants' contention, we note initially that the foundation requirements generally applicable to prior inconsistent statements do not apply to admissions of a party opponent. *State v. Gilmore*, 259 N.W.2d 846, 853 (Iowa 1977); Iowa R.Evid. 613(b).

As to appellants' contention that the impeachment was improper because no inconsistency is present, we note that in *State v. Matheson*, 130 Iowa 440, 448, 103 N.W. 137, 140 (1906), our state adopted the proposition

that if there is an inconsistency between the belief of the witness, as indicated by his previous declarations, and that which would naturally be indicated by his examination in chief, such previous declarations may be shown, although they are not directly contradictory of any specific statement made on his examination in chief.

Guided by this authority, we think the district court was correct in determining Randy's statements to be inconsistent for purposes of impeachment. As to the contention that the inconsistency is not material, we repeat the test our state adopted in *Gilmore*, 259 N.W.2d at 853, for assessing the materiality of proffered impeaching statements:

[C]ould the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction.

Our courts have recognized two categories of evidence which fall within this rule: (1) facts relevant to some issue in the case; and (2) facts discrediting the witness in respect to bias, corruption, skill, knowledge, or motive to falsify. *State v. Blackford*, 335 N.W.2d 173, 176 (Iowa 1983). We think the options available to an arsonist by which to enter the Stammer home and Randy's knowledge of those options are matters relevant to a material issue in the case: whether one or both of the Stammers directed a third party to burn down their home. We find no error in the district court's allowance of the impeachment.

## VI.

The appellants contend the district court erred by excluding a statement purportedly written by Terry Blumberg, who was suspected of actually setting fire to the Stammer home. The statement was a partial basis for the opinion of Michael Keefe that Blumberg had been procured by one or both of the Stammers to set the fire. Keefe, a special agent fire investigator with the State Fire Marshal's Office, was treated as an expert witness by the district court.

Iowa Rule of Evidence 705 states that an expert witness

may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

This rule is identical to Federal Rule of Evidence 705. *See* Iowa Code Ann., Rules of Evidence, at p. 127 (West 1983). That rule has been interpreted as placing "the full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination." *Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir.1980); *see also Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir.1978); *Polk v. Ford Motor Co.*, 529 F.2d 259, 271 (8th Cir.1976). Counsel for the Stammers did not attempt to cross-examine Keefe concerning the document during AMCO's case-in-chief. In the Stammers' case-in-chief, however, counsel called Keefe as a witness, re-elicited his opinion as to the arson, and then attempted to introduce the document into evidence in order to impeach the basis for Keefe's opinion. The district court sustained AMCO's objections that the document was inadmissible hearsay and that this was an improper direct examination of Keefe.

A district court is given control over the mode and order of interrogating witnesses and presenting evidence with an eye toward the efficient ascertainment of truth. Iowa R.Evid. 611. In an analogous situation, our courts have said that whether a party shall be permitted to abandon the cross-examination of a witness for the opposing party and examine him or her as his or her own witness is a matter wholly committed to the discretion of the trial court. *Reeves & Co. v. Younglove*, 164 Iowa 151, 155–56, 145 N.W. 502, 504 (1914). Even had the Stammers attempted to recall Keefe for purposes of cross-examining him on the basis of his opinion as provided for in rule 705, the allowance or disallowance of the recall would have lain within the district court's discretion. *State v. Hall*,

235 N.W.2d 702, 724 (Iowa 1975). In the present case, the Stammers made no attempt at recalling Keefe for additional cross-examination. Rather, they called him as their own witness. Given that context, the district court did not abuse its discretion in refusing to admit the statement.

## VII.

Appellants maintain the district court erred in refusing to admit into evidence, for purposes of impeachment, a tape recording made by Rhonda, Randy, and Terry Blumberg. Blumberg, on direct examination, testified that Randy Stammer had offered him money to burn the Stammer home. On cross-examination by Stammer's counsel, Blumberg admitted that he had a tape-recorded discussion with Randy and Rhonda in which he, Blumberg, had said his statements to the authorities implicating Randy were false. Blumberg testified, while still on cross-examination, that he had made these tape-recorded statements in order to avoid responsibility for his part in the arson investigation: "to cover up for my own things and to make it seem like I was being pressured into" making the statements incriminating Randy. In addition, Blumberg stated that he had been drunk when he made the tape-recorded statements. During their case-in-chief, the Stammers attempted to introduce the tape recording into evidence, with Rhonda as the sponsoring witness, in order to impeach Blumberg's testimony that he had been intoxicated while making the statements. The district court, believing the evidence's probative value was outweighed by the dangers of prejudice, confusion of the jury, and undue emphasis on collateral issues, sustained AMCO's objection and excluded the evidence.

The district court is vested with discretion to exclude evidence under rule 403 when its probative value is substantially outweighed by the potential for undue prejudice, confusion of issues, or waste of time. *See Carter v. MacMillan Oil Co., Inc.*, 355 N.W.2d 52, 55 (Iowa 1984); *Kelley v. Iowa State Educ. Ass'n*, 372 N.W.2d 288, 299 (Iowa App.1985). We think the district court was within its discretion in ruling that the tape recording's marginal relevance to the issue of Blumberg's sobriety was outweighed by the concerns which that court enunciated. Moreover, we think the offer of the tape recording was an improper attempt at impeachment of a collateral fact. *See State v. Blackford*, 335 N.W.2d 173, 176 (Iowa 1983). As counsel for the Stammers conceded during his in-chambers argument to the district court, "[f]or the purposes of this case as a whole, it doesn't matter whether Blumberg was drunk or not, . . . ." We find no error in the district court's exclusion of the evidence.

## VIII.

Finally, the appellants argue the district court erred in excluding one of the Stammers' witnesses as a sanction for their noncompliance with discovery rules. Interrogatories propounded by AMCO asked the Stammers whether they had consulted any expert witness with respect to this case. The Stammers' response was as follows:

No unless you consider the retention of Goldburg Claim Service, Inc., for the sole purpose of preparing claim to be within the purview of this interrogatory. Such retention was not for the purpose of assisting in the preparation of this case.

When asked by interrogatory whether they expected to call any person as an expert witness at trial, the Stammers responded: "No, not at this time." The day before trial began the Stammers filed the following supplementation of the interrogatories noted above:

Michael J. Pakkala, President, United Claims Service, Inc., 9031 Penn Avenue South, Bloomington, Minnesota 55431, will testify as a public adjustor as to how he computed the Defendants' Claim Loss which he prepared and which has been submitted to Plaintiff. He will testify also as to subsequent deterioration to the insured premises.

Pakkala had been the representative of Goldburg Claim Service, Inc., who had been consulted by the Stammers in 1983. Prior to his testimony, AMCO moved under Iowa Rule of Civil Procedure 125 and Local Rule

of Practice 2.4 to exclude Pakkala as a witness. Iowa Rule of Civil Procedure 125 provides in pertinent part that

[a] party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(a) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... (2) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

Local Rule of Practice 2.4 provides as follows:

Interrogatories. If Answers to Interrogatories are required to be supplemented, the supplemental answers shall be served no later than fourteen (14) days before the trial. Sanctions for failure to comply with this paragraph may include, but are not limited to, exclusion of evidence.

The principles which guide our review of the Stammers' claim were clearly stated in *Hoekstra v. Farm Bureau Mut. Ins. Co.,* 382 N.W.2d 100, 108 (Iowa 1986), as follows:

Of course, trial court has the inherent power to enforce our discovery rules and may impose sanctions for a party's failure to obey. Exclusion of expert testimony is within the realm of sanction alternatives. We will reverse the imposition of a sanction only when trial court abused its discretion. "We find an abuse of discretion when such discretion is exercised on grounds or for such reasons clearly untenable or to an extent clearly unreasonable." Thus, an abuse of discretion is rarely found. (citations omitted)

In support of their contention of error, the Stammers first argue that they were not required to supplement the interrogatory because Pakkala was not an expert witness. Consequently, they contend, the supplementation was unnecessary and cannot serve as grounds for the sanction imposed by the district court. We think this contention belied by the fact that Stammers' counsel stated in the district court that Pakkala's testimony was going to explain the proof of loss which he had prepared as a public adjuster in 1983. We think this properly constitutes expert testimony. *See* Iowa R.Evid. 702. In addition, the answers expressly supplemented AMCO's interrogatories inquiring as to expert witnesses. Moreover, we think counsel's contention that he supplemented the interrogatory as soon as possible is contradicted by the record which includes counsel's statement that he contacted Pakkala "about a year ago ... to see if he might testify," as well as the following rationale in support of the tardy supplementation:

Quite frankly, in all candor, Your Honor, I had almost not picked up this file until last weekend to prepare for this case for about a year and had really not thought about it. So I—I mean, I can't—I can't supplement the case. I can't supplement the Interrogatory before the Interrogatory's wrong regardless of what the Local Rule says about fourteen (14) days before.

And I'll tell you, quite frankly, I spent most of last week at a case for some people from Lakota before the Department of Public Instruction and did not turn my attention to this case until— Well, I'm sorry. Not the weekend. I did start working on it Thursday and a little bit Friday. Maybe that's not an admission I should put on the record, but I think it certainly supports the Resistance I make to the Motion for Sanctions.

The district court did not abuse its discretion in excluding Pakkala's testimony.

The district court is affirmed.

AFFIRMED.