*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID HOLT,

        Plaintiff-Appellant,

v

DETROIT DEPARTMENT OF
TRANSPORTATION, ANTHONY REED, and
LOUISE BECHARD,

        Defendants-Appellees,

and

HOME-OWNERS INSURANCE COMPANY and
AUTO-OWNERS INSURANCE COMPANY,

        Defendants.

UNPUBLISHED
August 18, 2022

No. 357329
Wayne Circuit Court
LC No. 20-006299-NI

Before: SAWYER, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

In this automobile negligence action, plaintiff David Holt appeals by leave granted[1] the trial court's orders granting summary disposition to defendants Detroit Department of Transportation (DDOT)**,** DDOT bus driver Anthony Reed, and Louise Bechard, who is plaintiff's

---

[1] *Holt v Detroit Dep't of Transp*, unpublished order of the Court of Appeals, issued August 17, 2021 (Docket No. 357329).

wife. We reverse the grant of summary disposition to DDOT and Bechard because there are material questions of fact regarding the respective negligence of Reed and Bechard.[2]

## I. BACKGROUND

This case arises from an automobile crash on May 14, 2019, in Detroit, Michigan. Plaintiff was in the front passenger seat of a car driven by Bechard. They were traveling eastbound on Fort Street.[3] Bechard pulled the vehicle to the far-right curb lane so that plaintiff could drop off letters in a mailbox from the window of the vehicle. The mailbox was close to the Fort Street-Trumbull intersection. Trumbull ends at Fort Street, creating a T-shape intersection. Bechard intended to turn left onto Trumbull from eastbound Fort Street after plaintiff dropped the mail off.

According to plaintiff, Bechard backed the car up and they saw that the traffic light facing them was green.[4] Bechard testified that the light was a full green circle, not a green arrow. Plaintiff and Bechard also testified that the light was initially red before turning green. Before Bechard made the left turn, she observed that traffic in the opposite direction, i.e., the westbound traffic on Fort Street, was stopped at the intersection. Bechard testified that she made the turn from "the side," i.e., the far-right lane, rather than the left-turn lane. In making the turn, Bechard successfully cleared the first two lanes of the opposing westbound traffic on Fort Street. She then collided with a DDOT bus being driven by Reed that was traveling in the westbound parking lane on Fort Street, i.e., the lane furthest to the right for westbound traffic.

Reed testified that he had a green light when he traveled westbound through the Fort Street-Trumbull intersection. His testimony indicates that he knew the light at the Trumbull intersection would be green by the time he arrived because he had stopped at a red light at the prior intersection. His testimony is ambiguous, however, as to when the light at the Fort Street-Trumbull intersection turned green. Reed further testified that before he entered the intersection he looked to his left and saw Bechard's vehicle in the left-turn lane. He then turned his attention to lining the bus up with the curb for the upcoming bus stop. Reed was traveling in the parking lane as he entered the intersection.[5] He testified that he did not see Bechard turn and that he assumed she was going to

---

[2] Plaintiff is not appealing the dismissal of his claim that Reed was grossly negligent such that he could be held individually liable. See MCL 691.1407(2).

[3] Fort Street technically runs northeast to southwest. For simplicity, we will refer to "eastbound" and "westbound" directions.

[4] Although Bechard was not asked directly if she backed the vehicle up before turning, her testimony indicates that she did. When asked "when was the next time you moved the car" after plaintiff dropped off the letters, Bechard answered, "Checking for the light." Regardless, even if there is a question of fact on this matter, it is not material to our analysis. The same is true for whether plaintiff told Bechard the light was green, or whether Bechard told plaintiff the light was green.

[5] The parties agree that one-hour parking is permitted in the third, outside lane on westbound Fort Street.

wait until he passed through the intersection before making her turn. As he entered the intersection, Reed heard one of his passengers scream and he looked to his left as Bechard crashed into the bus. Reed did not know what speed he was traveling at but testified that he was "slowing down" because he was approaching a bus stop.

Plaintiff brought suit alleging that he suffered a serious impairment of bodily function from the crash. He alleged that DDOT was liable under the motor-vehicle exception, MCL 691.1405, for Reed's negligence, and he also alleged negligence against Bechard.[6]

Bechard moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), solely on the basis of plaintiff's deposition testimony that he did not believe Bechard, his wife, did anything wrong in the accident. DDOT and Reed filed a brief opposing Bechard's motion for summary disposition and also moved for summary disposition under MCR 2.116(C)(7) (governmental immunity) and (C)(10). They argued that Reed did not act negligently when he "simply drove straight through the intersection at a green light." Conversely, they argued, Bechard breached multiples statutory duties, including failing to yield to oncoming traffic when making a left turn. Plaintiff opposed the motions for summary disposition, arguing that both Bechard and Reed acted negligently and that a jury should determine their relative fault.

After hearing oral argument, the trial court granted both motions for summary disposition.[7]

## II. DISCUSSION

### A. BECHARD

Plaintiff first argues that the trial court erred by granting summary disposition to Bechard. We agree.[8]

"To establish a prima facie case of negligence, plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4)

---

[6] Plaintiff also sought to recover PIP benefits from Home-Owners Insurance Company or Auto-Owners Insurance Company. Those claims are not at issue in this appeal.

[7] The motion hearing was conducted via Zoom and was not transcribed. The two orders granting summary disposition provide no reason for the court's decisions.

[8] We review de novo a trial court's decision on a motion for summary disposition. See *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "The court must consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Liparoto Const, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

damages." *Finazzo v Fire Equip Co*, 323 Mich App 620, 635; 918 NW2d 200 (2018). "In Michigan . . . the rule is that evidence of violation of a penal statute creates a rebuttable presumption of negligence." *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 86; 393 NW2d 356 (1986). See also *Longstreth v Gensel*, 423 Mich 675, 692 & n 9; 377 NW2d 804 (1985). In this case, plaintiff primarily argues that Bechard violated two provisions of the Michigan Vehicle Code (MVC), MCL 257.1 *et seq.*

First, plaintiff asserts that Bechard violated MCL 257.647(1)(b) by not moving into the left-turn lane before initiating the left turn from Fort Street to Trumbull. MCL 257.647(1)(b) provides:

> (1) The driver of a vehicle intending to turn at an intersection shall do so as follows:
>
> * * *
>
> (b) Approach for a left turn *shall be made in that portion of the right half of the roadway nearest the center line* in a manner as not to interfere with the progress of any streetcar, and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. [Emphasis added.]

There is no dispute that the "portion of the right half of the roadway nearest the center line" was the left-turn lane on eastbound Fort Street. However, Bechard testified that she made the turn from "the side," i.e., the right-curb lane, which would violate the statute.

Moreover, regardless of where Bechard initiated the turn from, there is also evidence that she violated MCL 257.650(1) by failing to allow the westbound traffic on Fort Street to pass through the intersection before she made her turn. MCL 257.650(1) provides:

> (1) The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to a vehicle approaching from the opposite direction which is within the intersection or so close to the intersection as to constitute an immediate hazard; but the driver, having so yielded and having given a signal when and as required by this chapter, may make the left turn and the drivers of all other vehicles approaching the intersection from the opposite direction shall yield the right of way to the vehicle making the left turn. At an intersection at which a traffic signal is located, a driver intending to make a left turn shall permit vehicles bound straight through in the opposite direction which are waiting a go signal to pass through the intersection before making the turn.

This statute imposed two related duties on Bechard. First, she was required to yield to oncoming traffic that was "within the intersection or so close to the intersection as to constitute an immediate hazard." Second, she was required to "permit vehicles bound straight through in the opposite direction which are waiting a go signal to pass through the intersection before making the turn."

Beginning with the second duty, there is no real dispute that at the time Bechard attempted the turn both eastbound and westbound traffic on Fort Street had a green light. As noted, both

plaintiff and Bechard testified that they initially had a red light on eastbound Fort Street before it turned green, and it was not a green arrow. And neither plaintiff nor Bechard are expressly disputing Reed's testimony that the light for westbound traffic at the Trumbull intersection turned green as he approached. Given this, and the record as a whole, the most reasonable inference is that both the westbound and eastbound lanes on Fort Street were stopped at a red light and then simultaneously had a green light. Accordingly, Bechard had a statutory duty to allow the opposing traffic stopped at the light to pass through the intersection before she attempted the left turn. By all accounts, she did not do this. Further, returning to the first duty outlined in MCL 257.650(1), there is evidence that Bechard failed to yield to a vehicle approaching from the other direction, i.e., the bus, that was "so close to the intersection as to constitute an immediate hazard."

Notably, Bechard does not address whether she complied with MCL 257.650(1). Instead, she argues that she is entitled to summary disposition because plaintiff testified that she did not do anything wrong. This argument is without merit. Plaintiff's testimony amounts to an opinion that Bechard did not breach a duty owed to him. However, as a lay witness plaintiff is not qualified to testify about the legal effect of Bechard's actions. See MRE 701; *Swain v Morse*, 332 Mich App 510, 531; 957 NW2d 396 (2020) (holding that the plaintiff's testimony indicating that there was not a conspiracy between the defendants was not dispositive of her conspiracy claim). More important than plaintiff's opinion that Bechard did not do anything wrong were the facts he testified to supporting the conclusion that she violated multiple statutory duties.

In sum, viewing the evidence in a light most favorable to plaintiff, there are material questions of fact whether Bechard breached duties owed to plaintiff. Accordingly, the trial court erred by granting Bechard's motion for summary disposition.

## B. DDOT

We also agree with plaintiff that the trial court erred by granting summary disposition to DDOT.[9]

---

[9] DDOT moved for summary disposition under MCR 2.116(C)(7) and (C)(10). Summary disposition may be granted under MCR 2.116(C)(7) for an "immunity granted by law." In *RDM Holdings, Ltd v Continental Plastics C*o, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court summarized the standards for analyzing a motion brought under that subrule:

> [T]his Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

Governmental agencies are immune from tort liability when engaged in a governmental function unless a stated exception applies. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 327; 869 NW2d 635 (2015). The motor-vehicle exception to governmental immunity provides that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405. Accordingly, to prevail against DDOT under the motor-vehicle exception, plaintiff need only establish that Reed acted negligently.

To begin, there is sufficient evidence to create a question of fact whether Reed violated MCL 257.647, which generally prohibits passing vehicles on the right:

> (1) The driver of a vehicle may overtake and pass upon the right of another vehicle only if 1 or more of the following conditions exist:
>
> (a) When the vehicle overtaken is making or about to make a left turn.
>
> (b) Upon a street or highway with unobstructed pavement not occupied by parked vehicles of sufficient width for 2 or more lines of moving vehicles in each direction and when the vehicles are moving in substantially continuous lanes of traffic.
>
> (c) Upon a 1-way street, or upon a roadway on which traffic is restricted to 1 direction of movement, where the roadway is free from obstructions and of sufficient width for 2 or more lines of moving vehicles and when the vehicles are moving in substantially continuous lanes of traffic.
>
> (2) The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting the overtaking and passing in safety. The driver of a vehicle shall not overtake and pass another vehicle upon the right by driving off the pavement or main-traveled portion of the roadway.

There is evidence that, taken in the light most favorable to the plaintiff, supports the claim Reed unlawfully passed vehicles on the right. As noted, he was traveling in the parking lane furthest to the right on westbound Fort Street, while, according to plaintiff and Bechard, the two inner travel lanes on westbound Fort Street were stopped at the light. As plaintiff argues, none of the necessary conditions for passing on the right are present in this case. Reed was not passing a vehicle about to make a left turn, MCL 257.637(1)(a), and the vehicles in the westbound travels lane on Fort Street were not "moving in a substantially continuous lanes of traffic," MCL 257.637(1)(b).

DDOT does not expressly dispute that Reed violated MCL 257.637 but instead suggests that this statute was not designed to prevent the harm that occurred in this case.[10] We agree with

---

[10] "[W]hether a plaintiff can use a statute to impose a duty of care on a defendant depends on (1) whether the purpose of the [statute] was to prevent the type of injury and harm actually suffered

-6-

plaintiff that the Supreme Court's opinion in *Rodgers v Blandon*, 294 Mich 699; 294 NW 71 (1940), rebuts that notion:

> In this State, it is negligence as a matter of law for a vehicle approaching another from the rear to pass it at an intersection or on the right-hand side. Certain of the perils of such passing are obvious. The car in the rear, passing on the right, cannot see the signals of the driver of the car in front; and passing at an intersection, either on the right or left, adds to the perils of pedestrians and traffic on the intersection, for the vision of the driver of the car that passes another at an intersection is obstructed by the car which he passes. If there are reasons for qualifying such traffic rules with regard to passing on the right or at intersections, they must necessarily be addressed to the legislative body. [*Id*. at 704.]

Applying this passage to the instant case, the accident at issue sufficiently implicates MCL 257.647's purpose. Passing on the right obstructs the driver's view of opposing traffic, and vice versa. Here, it can be inferred that when Bechard initiated the left turn she did not see the oncoming bus that was traveling in the outside parking lane to the right of stopped vehicles. And there is a question of fact whether Reed adequately observed Bechard's vehicle as he approached and traveled through the intersection. Accordingly, MCL 257.647 imposed a duty of care on Reed relevant to this case.

Aside from statutory requirements, a driver also owes a general duty of care to other motorists and pedestrians to exercise ordinary and reasonable care and caution in the operation of a vehicle. *DePriest v Kooiman*, 379 Mich 44, 46; 149 NW2d 449 (1967); *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956). "The question of whether the defendant in fact met the standard of reasonable prudence required of him is ordinarily one for the jury[.]" *Marietta v Cliff's Ridge, Inc*, 385 Mich 364, 370; 189 NW2d 208 (1971).

Plaintiff argues that Reed violated his common law duty by not observing that Bechard was making a left-hand turn in front of him and reacting to avoid the collision. DDOT responds that Reed had no duty to anticipate Bechard's negligent acts. In *McGuire v Rabaut*, 354 Mich 230; 92 NW2d 299 (1958), the Supreme Court addressed the duty of a "favored driver," i.e., one who has the right-of-way at an intersection, to a "subordinate driver" who is required to stop at the intersection. In that case, the intersection was between an arterial highway and a subordinate street. The Court framed the issue as follows:

> The difficulties in this case, as in other arterial highway versus subordinate street cases, arise from an apparent conflict between 2 equally sound and equally applicable principles of law. The first is that a driver on an arterial highway is entitled to assume that subordinate drivers will yield him the right of way. He is not bound to anticipate unlawful or negligent acts on their part. At the same time, however, the favored driver must conform to the standard of due care imposed upon

---

and (2) whether the plaintiff was within the class of persons which [the statute] was designed to protect." *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 16; 596 NW2d 620 (1999) (quotation marks and citation omitted; alterations by *Cipri*).

him as well as the rest of mankind, namely, that he shall exercise reasonable care for his own protection. [*Id*. at 234-235.]

The Court stated that "[i]t is clear, at the one extreme, that the favored driver is not permitted to lower his head, close his eyes, and charge blindly through intersections on the theory that such is his 'right' simply because he is the favored driver." *Id*. at 235. After reviewing caselaw, the Court concluded that the favored driver is required to take steps to avoid a collision

> when his continuing observations (which he must make, despite the fact that he is on an arterial highway) reveal, or should reveal to the reasonably prudent man, an impending danger. It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this point. Consequently, in the case before us the favored driver was entitled to assume . . . that his right of way would not be contested by a subordinate driver. He was entitled to rely upon this assumption until it became clear to him (or, until, as a reasonable man, considering pertinent surrounding circumstances of traffic and terrain, it should have been clear to him) that a subordinate driver was going to challenge or obstruct his right of way. At this point his duty to attempt to avoid the impending collision began. It is from this point onward, and not before, with respect to a crossing subordinate driver appearing in his path, that we scrutinize his acts to determine whether or not he is guilty of negligence for failure to act as a reasonably prudent person, and, in all fairness to him, we must measure his conduct in the light of the emergency then presented, if not of his making. [*Id*. at 236.]

In this case, DDOT emphasizes that Reed looked to his left before entering the intersection and observed Bechard waiting in the left-turn lane. Having no reason to believe that she would fail to yield to oncoming traffic, the argument runs, Reed reasonably turned his attention to the upcoming bus stop. Alternatively, however, it can be inferred from the record evidence that Reed was not making "continuing observations," *id*., of the road and upcoming intersection but instead was focused on improperly passing traffic on the right, "timing" the green light at the intersection and pulling into his next bus stop. When viewed in plaintiff's favor, the evidence creates a question of fact whether Reed exercised reasonable care and caution.[11]

DDOT alternatively argues that, even assuming Reed acted negligently, DDOT is nonetheless entitled to summary disposition because no reasonable juror could conclude that Reed was more than fifty percent at fault for the accident. Stated differently, DDOT contends that

---

[11] We also note that DDOT failed to preserve the video of the crash taken from a camera on the bus. Although it is unclear from the record whether the trial court considered applying an adverse inference against DDOT for failing to preserve the bus video, it nonetheless remains the case that in reviewing a motion under MCR 2116(C)(10) a court must view the evidence in a light most favorable to the nonmoving party, *Liparoto Const, Inc*, 284 Mich App at 29, and give the benefit of a reasonable doubt to that party, *West*, 469 Mich at 183. Applying those standards here, DDOT's failure to preserve the video supports our conclusion that there is a question of fact as to whether Reed acted negligently.

reasonable minds could not differ than Bechard was more than fifty percent at fault for the accident. MCL 600.2959 provides:

> In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the court shall reduce the damages by the percentage of comparative fault of the person upon whose injury or death the damages are based as provided in section 6306 or 6306a, as applicable. *If that person's percentage of fault is greater than the aggregate fault of the other person or persons*, whether or not parties to the action, the court shall reduce economic damages by the percentage of comparative fault of the person upon whose injury or death the damages are based as provided in section 6306 or 6306a, as applicable, *and noneconomic damages shall not be awarded*. [Emphasis added.[12]]

Generally, the respective percentages of fault is a determination that is left to the fact-finder. See *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 323-324; 661 NW2d 248 (2003) ("[T]he trier of fact in a tort-based action must allocate liability among those at fault.") (emphasis omitted). See also MCL 600.2957(1) ("In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and . . . . in direct proportion to the person's percentage of fault.").

Contrary to DDOT's argument, we conclude that reasonable minds could differ on whether Bechard was more than fifty percent at fault. As discussed, there is evidence that Bechard breached multiple statutory duties by: (1) initiating her turn from the far-right lane, rather than the left-turn lane, and (2) making a left turn before allowing the opposing traffic to pass through the intersection. However, the evidence also permits a reasonable inference that Bechard observed that the traffic in the opposing travel lanes was stopped when she began her turn and that she failed to see the bus because it was traveling in the parking lane, while illegally passing stopped traffic on the right. Further, when viewing the evidence in a light most favorable to plaintiff as the nonmoving party, it can be inferred that Reed failed to observe Bechard's vehicle making a left turn across multiple lanes of traffic and make reasonable efforts to avoid the collision. Because there is evidence that both Bechard and Reed breached multiple duties that contributed to the crash, the issue of comparative negligence should be left to the jury.

Reversed and remanded for proceedings consistent with this opinion. Plaintiff may tax costs as the prevailing part. MCR 7.219(A). We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Douglas B. Shapiro
/s/ James Robert Redford

---

[12] It is unclear from the record if plaintiff's is seeking excess economic damages. See MCL 500.3135(3)(c). If so, MCL 600.2959 would not apply to those claims and the jury would have to determine percentage of fault regardless of the noneconomic claims.